The judgment and order below were right and should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.

---

HUDSON G. BUSH, Respondent, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF ORANGE and Others, Defendants; HIRAM T. OSTRANDER and Others, Appellants.

*The repayment to drafted men their expenses, in hiring substitutes, is unconstitutional — limits of the taxing power — there must exist some moral or legal obligation — a taxpayer's action is not barred by a mandamus proceeding of which he had no knowledge.*

Chapter 664 of the Laws of 1892, in substance enabling the cities and towns of the State to raise, by taxation through the board of supervisors, a sum sufficient to pay $300, with interest, to each man, or his heirs, who was drafted, served and was honorably discharged in the war of the rebellion, or to each drafted man, or his heirs, who furnished a substitute, or to each drafted man, or his heirs, who paid the commutation of $300 for the procuration of a substitute, is unconstitutional, and is in direct violation of section 10 of article 8 of the Constitution of the State of New York, forbidding any county, city, town or village to give any money or property to or in aid of any individual, asso-

ciation or corporation, and prescribing that no county, city, town or village shall be allowed to incur any indebtedness except for county, city, town or village purposes.

The right of a drafted man to furnish a substitute was a personal privilege conferred upon him by an act of Congress, passed in 1864, and the money paid in the exercise of that privilege was not paid for a public object, but for the sole benefit of the drafted man; hence, it is not a valid exercise of the power of taxation to raise money for the purpose of repaying sums thus expended by individuals for their own benefit.

The State, through its Legislature, may recognize claims which are founded in equity or justice, and may manifest its gratitude for actual military or other public services, by the imposition of taxes for the benefit of those who have rendered such services or of persons depending upon them, but it cannot exercise the power of taxation to give a gratuity, pure and simple, resting upon no moral, ethical or honorary obligation.

A taxpayer may maintain an action, under section 1925 of the Code of Civil Procedure, to restrain a board of supervisors from taking any proceedings looking to the payment of claims made by drafted men under the act in question, and it is not material that a mandamus has been granted before the action was begun directing the board of supervisors to levy a tax to pay such drafted men, where the plaintiff was not a party to, nor advised of, the mandamus proceeding.

Appeal by the defendants, Hiram T. Ostrander and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Orange on the 27th day of August, 1895, upon the decision of the court rendered after a trial at the Orange Special Term.

The judgment, among other things, perpetually enjoined the appellant and others from taking any proceedings to enforce payment of claims made by them under chapter 664 of the Laws of 1892.

*Grant B. Taylor, F. R. Gilbert* and *William Hull,* for the appellants.

*William D. Guthrie* and *Carl A. D. Gersdorff,* for the respondent.

Per Curiam :

We agree with the learned judge at Special Term in his conclusion that chapter 664 of the Laws of 1892 is unconstitutional for the reasons set forth in his opinion. In saying that the power of taxation includes the power to recognize claims against the State or

its subdivisions, founded only in equity and justice, but not in grati-
tude or charity, we do not understand Mr. Justice Brown to deny
that the State may manifest its gratitude for actual military or other
public service by the imposition of taxes for the benefit of those
who have rendered such service, or of persons dependent upon them,
but that he refers to cases of gratuity pure and simple, where no
moral, ethical or honorary obligation exists.    In this view we affirm
the judgment upon the opinion of the court below.

All concurred, except Brown, P. J., not sitting.

Judgment affirmed, with costs.

The following is the opinion of the court below :

Brown, J. :

The principal question presented in this action is as to the consti-
tutionality of chapter 664 of the Laws of 1892, which is entitled,
" An act to enable the several cities and towns of this State which have
not already done so, to refund the money expended in furnishing
substitutes or in commutation by the men who were drafted into
the military service of the United States and held to service in the
several drafts under the conscription act of the United States,
entitled, ' An act for enrolling and calling out the National forces
and for other purposes,' approved March 3d, 1863, and the acts
amendatory thereto, while the option of commutation by the pay-
ment of three hundred dollars remained, and for the relief of the
men who entered the service under said drafts."

This act directs that, upon the conditions therein stated, the board
of supervisors shall raise by taxation a sum sufficient to pay $300
with interest, (1) to each man or his heirs who was drafted, served
and was honorably discharged, etc., or (2) to each man or his heirs
who, having been drafted, furnished a substitute, or (3) to each
drafted man or his heirs who paid the commutation of $300 for the
procuration of a substitute.

Under an act of Congress of 1863 (12 U. S. Stat. at Large, p. 733,
chap. 75, § 13), any person drafted could obtain his discharge from
liability under the draft by furnishing an acceptable substitute to
take his place in the draft or by paying to the government agent
the sum of $300 for the procuration of such substitute.

Legislation of a character precisely similar to that under consideration has been held to be unconstitutional in the courts of the States of Maine, Massachusetts, Pennsylvania and Kentucky. (*Perkins* v. *Milford*, 59 Maine, 315; *Moulton* v. *Raymond*, 60 id. 121; *Freeland* v. *Hastings*, 92 Mass. 570; *Mead* v. *Acton*, 139 id. 341; *Kelly* v. *Marshall*, 69 Penn. St. 319; *Ferguson* v. *Landram*, 1 Bush [Ky.], 548.)

In all these cases the decision of the court was placed upon the ground that the right of a drafted man to furnish a substitute was a personal privilege conferred upon him by act of Congress; that money paid in the exercise of that privilege was not paid for a public object, but for the sole benefit of the drafted men, and that it was not a valid exercise of the power of taxation to raise money for the purpose of the repayment of sums expended by individuals for their sole benefit.

A distinction is drawn in the opinions of the courts between acts of the Legislature authorizing the raising of money for the payment of bounties to *induce* men to enlist in the army and also for the repayment of money which had been advanced by the town or by individuals to a *public fund* for the *purpose of procuring enlistments*, and laws the object of which was to refund moneys paid by individuals for their private benefit alone. This distinction is very clearly stated in Cooley on Taxation (2d ed. pp. 136, 137), as follows :

" The several municipal divisions of the State, under proper enabling legislation, may promise and pay bounties to those who will volunteer to fill any call made upon their people for their proportionate contribution to the public armies in time of actual or threatened hostilities. They may also pay bounties to those who have voluntarily entered the public service from or as representing their locality in advance of any such promise. And they may raise moneys by tax in order to refund to individuals any sums advanced by them to relieve the municipality from a draft, or to fill its assigned quota of a call, on an understanding based upon informal corporate action, that the sums should be refunded when legislation could be had permitting it, and perhaps also where the advancements were made without any such informal action. But they cannot be empowered

SECOND DEPARTMENT, DECEMBER TERM, 1896.          [Vol. 10.

to refund to individuals sums which such individuals may have paid in order to procure substitutes in military service, for themselves as individuals, in an impending draft.   Such payments being made by the parties in their own interest, the repayment of them by the public could be nothing else than an appropriation of public moneys to a private purpose."   (See, also, Burroughs on Taxation, 13, 14.)

The same distinction is also very clearly illustrated in the cases decided by the Supreme Court of Massachusetts.

Thus, in *Freeland* v. *Hastings* (*supra*) the town voted to raise a sum to repay voluntary contributions made to pay bounties for the purpose of procuring volunteers to enlist; and also the sum of $1,000 to repay to ten drafted men the sums which they had paid to procure a substitute.   In voting this tax the town acted under a statute which authorized any town to raise by taxation money to pay and refund any money which had already been paid by such town or contributed by individuals in aid of and for the purpose of filling its quota or *furnishing men for the war*, etc.

The appropriation to repay the sums paid for substitutes was held illegal, the court saying: " We know of no rule or principle on which a valid authority to raise money by taxation to be appropriated to the repayment of money expended by individuals for such a purpose, could be granted by the Legislature.   A statute conferring such power would be obnoxious to the objection that it authorized the raising of money by taxation for the exclusive benefit of particular individuals; that it relieved one citizen from the performance of a legal duty at the public expense, and appropriated money for a private purpose which could only be raised and used for public objects.   It is hardly necessary to say that a statute designed to accomplish such purposes would be against common right, and would transcend the authority conferred on the Legislature by the Constitution."   This ruling was reaffirmed and applied in the case of *Mead* v. *Acton* (*supra*).   In the latter case the court said : " In any view we can take of the statute, the payments it contemplates are mere gratuities or gifts to individuals.   The principle would be the same if a town should vote a gratuity or a pension to one who had rendered services as an officer, or was in any way entitled to its gratitude.   This a town has not the power to do, even with the sanction of the Legislature.   A statute conferring such power is

unconstitutional, because it authorizes raising money by taxation for the exclusive benefit of particular individuals, and appropriates money for a private purpose, which can only be raised and used for public objects. The right to tax is the right to raise money by assessing the citizens for the support of the government and the use of the State. The term 'taxation' imports the raising of money for public use, and excludes the raising of it for private uses."

The power of taxation possessed by the Legislature is of the broadest character possible, and includes the power to recognize claims against the State or its subdivisions, founded only in equity or justice, or in gratitude or charity. In the absence of express constitutional restriction the Legislature can make appropriations of public money whenever the public well-being will be promoted. But the question whether the purpose for which the money is raised is public or private, is one for the courts to determine. That question stands upon the same footing as the question of the public use of property sought to be taken under the power of eminent domain. When the purpose of an act of the Legislature is thus assailed the courts must determine whether its object is to promote the public good or private interest; and if there is no possibility that it will promote in any degree the public welfare, it transcends the power of the Legislature and is void. Judge COOLEY, in his work on Constitutional Limitations (*227), thus states his conclusion from a review of many cases : " However broad are the terms employed in describing the legislative power over taxation in these cases, it is believed that no one of them has gone so far as to sanction taxation or the appropriation of the public revenue in order to refund to individuals moneys which they may have paid to relieve themselves from an impending draft, or may have voluntarily contributed to any public purposes, from motives purely personal to themselves, without any reason to rely upon the credit of the State or of any municipal corporation for reimbursement, and where the circumstances are not such as fairly to challenge the public gratitude. Taxation in such a case, where no obligation, honorary or otherwise, rests upon the public, would be nothing else than a naked case of appropriating the property of the taxpayer for private purposes, and that without reference to anticipated public benefits."

Independent of any constitutional restraint upon the Legislature,

it would, in my opinion, be difficult to uphold the validity of the law under consideration.

The money paid by a drafted man to escape personal service in the army was in no sense beneficial to the public. The sole object of the payment was to escape the performance of a public service, and it was an affair which concerned the drafted man alone. Not in the slightest degree did it promote the public good.

But the statute falls directly within the prohibition of section 10, article 8, of the Constitution of this State. That section, so far as material to this case, is as follows: " No county, city, town or village shall hereafter give any money or property   *   *   *   to or in aid of any individual, association or corporation.   *   *   *   Nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

What these municipal corporations are forbidden doing by the Constitution, the Legislature could not empower them to do; and it seems to me quite plain that any statute purporting to empower a town to repay to one of its citizens money which had been expended for a purely private purpose is to authorize a gratuity, and is consequently void.

The counsel for the defendants Ostrander has referred to an opinion given by Judge O'BRIEN, when Attorney-General, to the effect that the law under consideration was valid.

That opinion appears to be based on the rule that the Legislature may authorize the payment of claims against the State or its municipal corporations which are supported only by a moral or equitable consideration, and that laws directing the payment of such are not within the limitations of the provision of the Constitution quoted. That rule does not, however, in my opinion, embrace the claim in question. The town derived no benefit from the procuring of a substitute by a drafted man, and no moral or equitable consideration exists why money paid for such a purpose should be reimbursed by the town.

In *Taber* v. *Supervisors of Erie Co.* (131 N. Y. 432), Judge FINCH, in referring to this class of claims, said : " I am not impressed by the argument that the reimbursement given to localities for an excess which operated to relieve them in the December assignment of quotas ought to extend to individuals whose substitutes

effected *pro rata* the same relief. The cases are widely different. The individuals either owed military service or they did not. If they did, what they paid for a substitute simply performed their own duty by proxy, and the State owed them nothing. No equity of theirs called for reimbursement, while the taxation of localities, when replaced by a general taxation for bounty purposes, did call for some scheme which, to a limited degree, would equalize the burden," and in this opinion Judge O'BRIEN appears, from the record, to have concurred.

There is no analogy between such a claim as Ostrander's and that of a person who has performed services for a municipal corporation, the benefit of which the corporation receives and enjoys, but which, owing to defective laws or failure to comply with legal provisions, the claimant cannot enforce. In such a case a moral obligation rests upon the community to pay, and a law which authorizes payment cannot be said to be within the provision of the Constitution referred to. The cases referred to in Judge O'BRIEN's opinion are of the latter class. But the claims before the court, as already stated, are not supported by any moral obligation resting upon the town. Hence their payment is a gift, pure and simple, and falls directly within the restraint of the Constitution. No case has been cited which upholds legislation of this character, and in view of the numerous authorities cited by the plaintiff, sustaining the contention that the law is unconstitutional, the injunction must be granted.

The argument that the town received the money from the State to pay the claim of the Ostranders has been considered, but it is not regarded as of any weight in this action, and need not, therefore, be further referred to.

The plaintiff may maintain this action to restrain the defendant from acting under the statute, and the allegations of the complaint are sufficient, under section 1925 of the Code. The fact that a mandamus was heretofore granted, directing the board of supervisors to levy the tax, does not affect the plaintiff. The order in that proceeding concludes only the parties to it. The plaintiff alleges that he was not advised of the mandamus proceedings, and had no knowledge or information thereof until about July tenth. So far as he is concerned, the case does not differ from what it would be if the board of supervisors had acted upon its own motion.

The demurrer must, therefore, be overruled, and there must be final judgment in plaintiff's favor quashing the writ of mandamus heretofore issued to the board of supervisors, and restraining said board from levying or assessing any tax on the town of Woodbury, and restraining the defendants, who are officers of said town, from paying out any money or funds of said town, for any of the purposes of chapter 664, Laws of 1892.