(44 App. Div. 425.)

## In re STRAUS.

(Supreme Court, Appellate Division, First Department. November 24, 1899.)

CONSTITUTIONAL LAW—LEGISLATIVE POWERS—IMPOSING DUTY ON CITY TO PAY CLAIMS.

    Laws 1899, c. 700, § 1 et seq., providing that municipal corporations shall pay the expenses of a person who has been indicted within its boundaries for a criminal offense in connection with his official duties, is unconstitutional, as such a claim could not possibly fall within the limitations imposed by article 8, § 10, of the constitution, upon the power of the legislature to require the expenditure by counties, etc., of their money.

Appeal from special term, New York county.

Application by Nathan Straus for the appointment of a referee to hear and examine into and report concerning his claim against the city of New York. From an order denying the motion he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Bernard Naumburg, for appellant.
Theodore Connoly, for respondent.

RUMSEY, J. By section 1 of chapter 700 of the Laws of 1899 it is provided that any official of any city or county of this state who shall have been successful in any trial or proceeding commenced within the city or county in which he was elected to remove him from office, or in which it is sought to convict him of any crime in the performance of or in connection with his official duties, may apply to a justice of the supreme court for the appointment of a referee to hear, examine into, and report concerning the claim of the official against the city or county in which the trial or proceeding against the official was commenced, arising out of reasonable counsel fees paid by such official. The section further provided that the referee should be appointed, and that he should hear and examine into such claim, and report his examination to the court, and that, if the court should confirm the report of the referee, the claim should be audited by him upon receipt of a certified copy of the order of confirmation. Further sections prescribe the manner in which the claim should be made, and the last section requires the officials of the city or county having charge of making up the annual expenditures of the municipality to cause to be included in the taxes to be levied for the year following the audit the amount of such claim, with interest thereon. The appellant here applied to the special term in the county of New York for the appointment of a referee pursuant to the provisions of this statute. In his application it was stated that in the years 1894 and 1895 he, with other persons, had been commissioners of parks of the city of New York, and that on the 5th day of April, 1895, he was indicted by the grand jury in the city and county of New York for the crime of having unlawfully conspired with other persons to expend and to cause to be expended by the board of parks certain moneys in violation of the statute pro-

vided in that regard. He states further that he was arraigned upon the indictment, and pleaded not guilty, and that subsequently, by an order of the court, the indictment was dismissed. It is further stated that in the defense of this criminal action he had paid out for counsel fees the sum of $5,000, and the petition alleged that he had a claim against the city of New York for that sum. Notice was given to the city authorities of the application for the appointment of the referee pursuant to this section. Upon the hearing at the special term the corporation counsel appeared for the city, and opposed the motion. The court denied the motion, and from the order then made this appeal is taken.

The motion was denied upon the single ground that, so far as the statute operates to compel a municipal corporation to pay the expenses of a person who has been indicted within its boundaries for a criminal offense in connection with his official duties, it is unconstitutional. The action of the court below is defended here upon that single ground, and the only question, therefore, presented for our decision, is whether it was within the power of the legislature to impose this liability upon the city of New York. There is another section of the statute providing for the payment of similar claims which may be made against the state. The validity of that section is not involved in this proceeding. Whether it is within the power of the legislature to repay out of the treasury of the state the expenses of persons who have successfully defended themselves against an indictment, it is not now necessary to consider. The question here is simply whether the legislature has the power to impose upon a municipal corporation within this state the duty of paying such claims. In an early day in the history of this state it was held that the legislature had power to levy a tax upon the taxable property of a town, and to appropriate the sum for the payment of a claim made by an individual against the town, although such claim was not based upon any legal liability of the town, and could not have been enforced in an action against it. Town of Guilford v. Supervisors of Chenango Co., 13 N. Y. 143. In the opinions in that case some things were said as to the extent of the power of taxation possessed by the legislature which were not absolutely essential to the determination of the case, and which have not been accepted in other states, nor to their full extent by the court of last resort in this state. It is not necessary that we should examine the correctness of the reasoning of the learned judges who delivered the opinions of the court in that case. Since it was decided, and quite possibly as a result, to some extent, of that decision, the people have put limits to the power of the legislature to require the expenditure by counties, cities, towns, or villages of their money, and have prescribed that no county, city, town, or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, etc. Const. art. 8, § 10. Strictly construed, this provision is broad enough to forbid the payment by any of the corporations named in it of any of its money to an individual, except in payment of some legal or equitable obligation which it owes him. But it is not clear that such a stringent effect is to be given to it. In the case of

Wrought-Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542, it was held by the court of appeals, without, however, considering this particular provision of the constitution, that the legislature had power to validate a claim against a town, although that claim had been declared invalid by the courts, if the claim was such that the town should, in fairness and good morals, pay it, although the payment could not be enforced by legal proceedings. It is quite probable that such a construction would be given to this section, and therefore the question presented here will be examined as though the section of the constitution permitted the legislature to recognize and require the payment by municipal authorities, not only of legal and equitable obligations, but also of claims which stand only upon a moral obligation, which is not enforceable in the courts. But, even giving this construction to this statute, the power of the legislature is not absolute in respect to such matters, and it can only legally be exercised as long as it does not go beyond the limitations which the constitution has imposed. Wherever the exercise of the power is invoked, it must be determined by the courts whether the object for which the tax is imposed is within the constitutional prohibition, and that question is one purely of judicial cognizance. Weismer v. Village of Douglass, 64 N. Y. 91; Board of Education v. State, 51 Ohio St. 531, 38 N. E. 614; 25 Am. & Eng. Enc. Law, 74. There can be no doubt that the city of New York was under no legal or equitable obligation to pay to the appellant the money which he seeks in this proceeding to obtain. If there had been such an obligation, he could have enforced it by an action, and such a proceeding as this would not have been necessary.

It remains to be considered whether there was any moral obligation by virtue of which, in any aspect of the case whatever, it could be said that the city should have repaid to him the expenses to which he has been put in defending himself against this indictment. It is not necessary, in considering that question, to determine what precisely constitutes a moral obligation under the constitution. It may be said, roughly, that such an obligation is one which a person owes, and which he ought to perform, and which he is not legally bound to fulfill. Of this sort of obligation, it may be said that there are two kinds. One of these recognized by the law is the moral obligation which arises where there has been a legal or equitable obligation, of which the binding force has ceased to exist; as where facts have arisen since the obligation was incurred which may be pleaded to defeat the action to enforce it. Such is the case where the statute of limitations has run against a claim, or where a debtor has been discharged by bankruptcy. While obligations of this nature are said to be only moral, yet we all recognize that in fact they amount to something more, and that, therefore, they are available as a sufficient consideration to support an actual promise to do the thing which, but for the moral existence of the obligation, could not be compelled. The other class of moral obligations includes those which have not been preceded by any legal liability, and yet which might be sufficient to authorize the legislature to require their satisfaction, and which certainly would justify an honorable man in

meeting them. Such are cases where money has been expended for the benefit of the city by one without any authority, and the city has received the full benefit from the expenditure, or such an obligation as existed in Town of Guilford v. Supervisors of Chenango Co., or Wrought-Iron Bridge Co. v. Town of Attica. But all these examples involve the idea either that the municipal corporation has received a pecuniary benefit from the person who presents his claim, or that it has imposed upon it a liability in regard to which it has become in some way honorably estopped from refusing to pay. Unless there was some relation between the person making the claim and the city by reason of which a burden was imposed upon him, or his money was taken for the benefit of the city, clearly no reason can exist why the city should be called upon to pay him back the money he has paid out voluntarily for his own immediate benefit. There can be no pretense in this case that there was any relation between the appellant here and the city, growing out of this indictment. It is quite true that he was an official of the city. That condition made it possible to take criminal proceedings against him, but it did not in any way connect the city with these proceedings. His duty towards the city consisted solely in the performance of the duty of his office. For any violation of these duties he was not criminally responsible to the city any more than is any individual who steals his neighbor's money criminally responsible to the owner of the money. The criminal liability arises solely between the individual accused and the state, and out of the effort made by the state to impose upon him the punishment for his criminal act. The city could take no part in his prosecution, nor could it do anything to put an end to it. Legally and actually it had no connection with it. The prosecution was begun by an officer created by the laws of the state,—the district attorney. It was carried on in the courts of the state. It was a matter purely between the accused person and the people of the state. As the city did not undertake it, and could derive no benefit from its successful result, no reason can be seen why any moral obligation arose on behalf of the city to make good the expenses to which the state had put the appellant. In the case of Bush v. Board, 10 App. Div. 542, 42 N. Y. Supp. 417; Id., 159 N. Y. 212, 53 N. E. 1121,—it is said that the state cannot require the exercise by a county of the power of taxation to give a gratuity. The principle established by that case is precisely applicable to the case at bar. We are cited by the appellant to the case of Roberts v. State, 160 N. Y. 217, 54 N. E. 678. It appeared that Roberts, having been convicted of forgery, and confined in state's prison, had been pardoned, and restored to citizenship, and the legislature passed an act authorizing him to present his claim to the court of claims for the damages sustained by reason of his imprisonment, and authorized it to hear and determine such claim, and award such compensation as appeared reasonable. The court of claims awarded a certain compensation, and its judgment was reversed in the appellate division. Id., 30 App. Div. 106, 51 N. Y. Supp. 691. In the court of appeals, where that reversal was affirmed, it was said that Roberts had no valid claim against the state arising out of his con-

viction, even though the conviction was improper, and that the statute was not subject to a construction which would concede the liability of the state. It was further said that, if the statute was subject to such a construction, grave doubts would arise as to its constitutionality. We cannot see that what is said in that case can be an authority for the appellant here, either affirmatively or negatively, but, so far as it bears on the case, all its weight must be against him. There is no theory upon which it can be suggested that the city of New York occupied any such relation towards the appellant as to make it in any way responsible for his indictment, or liable to repay to him his expenses.

The order denying his motion is therefore affirmed, with costs. All concur.