(88 App. Div. 560.)

**PEOPLE ex rel. STEPHENS v. PHILLIPS et al., Board of Revision of Assessments.**

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. MUNICIPAL CORPORATION—CHANGE IN GRADE OF STREET—DAMAGES—CONSTITUTIONAL LAW.

    Where a city was under no legal liability to pay damages resulting from a change of the grade in a street, there is no moral obligation to one acquiring abutting property after the change sufficient to support a law authorizing such payment, in the face of Const. art. 8, § 10, providing that no city shall give any money, except for city purposes.

2. SAME—AWARD BY BOARD—REVIEW BY CERTIORARI.

    An award by the board of revision of assessment of the city of New York, under Laws 1899, p. 1547, c. 711, whereby the board is "authorized and empowered in its discretion" to ascertain and award damages to the owners of certain real property for a change in the grade of a street, is not reviewable by certiorari.

Appeal from Special Term, New York County.

Certiorari by the people, on the relation of Olin J. Stephens, against N. Taylor Phillips and others, composing the board of revision of assessments of the city of New York. From an order quashing and superseding the writ, relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Ernest Hall, for appellant.
Terence Farley, for respondent.

INGRAHAM, J. Chapter 711, p. 1547, of the Laws of 1899, provides that the board of revision of assessments of the city of New York "is hereby authorized and empowered in its discretion to ascertain and determine the damage to the following real property" specifically described, "and to award damages to the owners thereof to the extent that their said real property may have been injured in both fee and rental value, in consequence of said change of said original grades of the streets or avenues on which said several lots abut. * * * The said board of revision shall consider as an ele-

ment of damage suffered the amount of any assessment proposed or confirmed for the grading of said several streets or avenues on which said several lots abut which has or may be levied against any of said several lots."

The petition upon which the writ of certiorari was allowed alleges that the relator submitted a claim to the board of revision of assessments for the damage that he had sustained in consequence of the change of grade of Edgewater Road, which abutted upon the premises described in the act; that this road had existed from colonial times, and the grade of said road was changed by a map filed with the commissioner of street improvements of the Twenty-Third and Twenty-Fourth Wards on the 2d day of November, 1895; and it is alleged that "by reason of the said change of grade of Edgewater Road the petitioner has suffered damage to the amount of fifty-five thousand three hundred and forty-four dollars and forty-seven cents"; that "thereafter, pursuant to said act, the board of revision of assessments met to consider the said claim"; that the relator appeared, and offered proof in support of said claim; that the city of New York appeared before the said board, and produced proof on its behalf in opposition to the claim of the petitioner, and that subsequently the board awarded to the relator the sum of $5,296.44, and thereupon issued a certificate that, "pursuant to the provision of chapter 711 of the Laws of 1899, the board of revision of assessments hereby ascertain and determine the damage claimed by Olin J. Stephens to his real property located on the easterly side of Edgewater Road, between Westchester avenue and Jennings street, in the borough of the Bronx," that they have ascertained and determined the damage to the said real property in consequence of the damage of original grades of said road, and that the amount that they award to the said Stephens is the sum of $5,296.44, with interest on the said sum at 6 per cent. per annum, from May 1, 1897, to the date of payment. The relator, not being satisfied with this award, obtained a writ of certiorari, directed to the board, to review their action in making such award, whereupon, on motion of the defendants, the Special Term quashed and superseded that writ upon the ground, as appears by the opinion of the Special Term, that the action of the board of revision of assessments was not reviewable in certiorari proceedings, inasmuch as the award authorized was wholly in the discretion of the board.

It is not altogether clear just what discretion was vested in the board of revision of assessments. It is conceded that, but for this statute, the owners of this property would have no claim to be awarded damages for a change of the grade of the abutting streets; and it would seem that the object of the act was to authorize this board of revision of assessments to make such an award as it, in its discretion, should determine was the damage to which the owners of the land were equitably entitled on account of some change of grade which is described in the act as "changing of said original grades of the streets or avenues." No legal right was given to the owners of this property to have the question of the amount of damage that the owners of the property had sustained determined by the board of re-

vision of assessments. There was no provision in the act by which any judicial inquiry was authorized, or which authorized the board to take evidence and judicially determine the amount to which the owners of the property would be entitled. The board, in its discretion, was authorized to ascertain and determine the damages sustained, and were directed to consider, as an element of damage suffered, the amount of any assessment imposed or to be imposed upon the property for the grading of the several streets or avenues on which said lots abut; but they were not required to allow to the owners of the land the amount of such assessment, nor was the board, in terms, required to make any award. The situation when the act was passed was that the grade of certain streets had been changed, but for any damage caused thereby the municipality was not responsible; and therefore the board of revision of assessments of the municipality was authorized and empowered, in its discretion, to ascertain and determine what injury had been caused to the property abutting upon the road, the grade of which had been changed, and to award to the owner of the property an amount that they should consider would be compensation for the injury which had been occasioned to the property by the change of grade. The act did not require the board to take evidence or to act judicially in determining the question submitted to them. It was permissive, rather than mandatory; and it was left to the discretion of the board to determine whether the owners of property had in fact sustained any damage by the change of grade of the abutting streets, and, if so, the extent of that damage for which prior to the passage of the act the municipality was not responsible. An award, when made, would be in the nature of a gratuity to the property owners, the amount of which was to be determined by this board, with an authority to the municipality to pay the amount when determined.

It is not clear but that such an application of the money of the municipal corporation is prohibited by section 10 of article 8 of the Constitution, which provides that:

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation * * *; nor shall any such city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

Bush v. Board of Supervisors, 159 N. Y. 212, 53 N. E. 1121, 45 L. R. A. 556, 70 Am. St. Rep. 538, expressly holds that, under this provision of the Constitution, the statute which provides for the imposition of a tax upon a town to raise money for the payment of claims, as to which there was no legal or moral obligation on the part of the town to pay, was in conflict with this provision of the Constitution; and that principle has been applied in a number of cases. See Matter of Chapman, 168 N. Y. 80, 61 N. E. 108, 56 L. R. A. 846, 85 Am. St. Rep. 661; Matter of Straus, 44 App. Div. 425, 61 N. Y. Supp. 37; Matter of Jensen, 44 App. Div. 509, 60 N. Y. Supp. 933; Matter of Greene, 166 N. Y. 485, 60 N. E. 183.

The question as to what is a sufficient moral obligation on the part of a municipal corporation to justify the Legislature in imposing

upon the municipal corporation a legal obligation to pay money raised by taxation has been the subject of considerable discussion. On the one hand, it has been determined that where a municipal corporation has actually received the benefit of a contract made with an individual, or supplies furnished by an individual, although there is no legal liability because of a failure to comply with some limitation imposed upon the officers making the contract on behalf of the municipality, there is a moral obligation sufficient to justify the Legislature in imposing a liability to pay upon the municipal corporation. Wrought Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542. On the other hand, no such obligations existed in favor of persons who had been drafted into the military service of the United States during the War of the Rebellion which would authorize the Legislature to empower the supervisors to raise by taxation the money needed to pay any drafted man who served personally in the Civil War, or paid commutation money in lieu of such personal service. Bush v. Board of Supervisors, supra.

The act now under consideration authorizes the city of New York to pay to the owners of property the damages sustained by reason of the change of grade in the abutting street. The payment of this sum is not by the act restricted to the owner of the land at the time of the change of grade, who had thereby sustained damage. It may be that there existed such a moral obligation on the part of the municipal corporation that had changed the grade of a street, to pay the damage thereby caused to abutting property, as would justify the Legislature in passing an act authorizing or requiring the municipal corporation to pay the amount of such damage; but there certainly was no such moral obligation to pay to persons who had acquired title to the property after the change of grade, and after the damage had been sustained, as would justify the municipal corporation in appropriating money raised by taxation to pay a sum of money for the damage that the property had sustained before they had acquired title. It appears from this record that after the change of grade in the street the relator acquired property which he alleged was damaged by such change, and that the change of grade was made before the statute was passed. Whatever damage was caused to this property by the change of grade was caused to its owner at the time the change was made. This relator, having purchased the property after such a change had been made, cannot be said to have been in any way damaged or injured, when the grade of the street is the same as it was when he purchased the property; and I can see no legal or moral obligation upon the municipality to pay him the damages that were sustained by his predecessor in title. No part of the relator's property was taken by the public for the street, and certainly it cannot be presumed that he acquired the right of the owners of the property to be paid the damage caused by the change of grade prior to the time that he acquired title.

The city has not appealed from the award that was made, and the question as to the power of the Legislature to impose upon a municipal corporation a liability for the damage caused by the change of grade of this street is only relevant in considering the construction

to be given to the act; but a careful examination of the act fails to disclose any legal duty imposed upon the board of revision of assessments, or upon the municipal corporation, unless it is an obligation on the part of the municipal corporation to pay any award that should be made by the board of revision of assessments. The board, in its discretion, is to determine the amount of damage occasioned to the property by the change of grade. It is not restricted to any particular method in the determination of that question; and, in view of the limitation of the power of the Legislature to require money that has been raised by taxation to be applied in aid of an individual, or for any except city purposes, and the language that is used in the act, we think it clear that it was the intention to vest a discretion in the board in the determination of this question, which was not subject to be reviewed by an appeal to the judicial power. To review that determination would be to substitute the judgment of the court for the discretion that was vested in the commissioner as to the amount that was to be awarded.

The cases in which the court will review the action of subordinate bodies was before the Court of Appeals in People ex rel. Kennedy v. Brady, 166 N. Y. 44, 59 N. E. 701. It was there said:

"Official acts, executive, legislative, administrative, or ministerial in their nature or character, were never subject to review by certiorari. The writ could be issued only for the purpose of reviewing some judicial act. * * * The sole question, therefore, is whether the official act of the defendant in removing the relator was a judicial act, in nature or character. Unless it was, the court below had no power to review it upon certiorari."

In Matter of Armstrong v. Murphy, 65 App. Div. 126, 72 N. Y. Supp. 475, in determining what questions could be reviewed by writ of certiorari, this court said:

"The question which we have here presented, therefore, is whether the refusal of the commissioner to grant the license is a judicial act. Ordinarily these words include a judicial proceeding wherein an interested party is entitled to a trial or hearing; or, differently expressed, a judicial act is one involving the exercise of judicial power, by which is meant the power to hear and determine controversies between adverse parties or questions in litigation."

Quoting People ex rel. Mayor v. McCarthy, 102 N. Y. 630, 8 N. E. 85, where it is said:

"A judicial review of conclusions based mainly, if not exclusively, upon the mental operations and the individual knowledge and qualifications of the persons composing the tribunals referred to, is obviously impracticable, if not impossible. Reasons founded upon the personal knowledge and experience of individuals, or conclusions reached by the exercise of their intellectual faculties, cannot be recorded and reproduced in such a manner as to enable an appellate tribunal intelligently and fairly to review the correctness of their judgment. Inherent and insuperable difficulties exist in the very nature of the process by which conclusions are reached, which render any appellate jurisdiction over their determination impracticable and ineffectual."

It follows, therefore, that there was no official act of the board of revision of assessments that was subject to review by writ of certiorari, and that the order appealed from must be affirmed, with $50 costs and disbursements.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN, JJ., concur.

HATCH, J. I concur upon the ground that the determination of the commissioners authorized by the act is conclusive, and cannot be reviewed by the court upon appeal.