(120 App. Div. 774)

### JOHNSON v. PETTIT et al.

(Supreme Court, Appellate Division, First Department.    July 15, 1907.)

MUNICIPAL CORPORATIONS—CHANGE IN STREET GRADE—DAMAGES—AWARD—RE-
VIEW IN EQUITY.

  ·  Laws 1894, p. 170, c. 74, authorized the construction of a viaduct in a street, not providing for compensation to neighboring owners for loss of access to the street.  Laws 1905, p. 1529, c. 626, authorized the board of assessors in its discretion to determine and allow damages sustained. *Held*, that a court of equity may determine, as between rival claimants to the fund awarded, which was legally entitled to it;  the board's nonreviewable discretion being confined to a determination whether any damage had been sustained and if so how much, and certiorari not lying to review the determination as to who was entitled to the award.

    Ingraham and Lambert, JJ., dissenting.

Appeal from Special Term, New York County.

Suit by George F. Johnson against ·Le Grand K. Pettit and the city of New York.  From a judgment dismissing the complaint upon the merits, plaintiff appeals.  Reversed, and new trial ordered.

See 102 N. Y. Supp. 131.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Joseph S. Frank (John C. Shaw, of counsel), for appellant.  Joseph A. Flannery (Albert Bach, on the brief), for respondent Pettit.

CLARKE, J.  This is an appeal from a judgment of the Special Term dismissing the complaint in an equity action brought to determine the ownership of an award made by the board of assessors of the city of New York for consequential damages sustained by a plot of five lots situated on the south side of West Ninety-Sixth street, between Riverside Drive and West End avenue, in the borough of Manhattan, by reason of the elevations of the grade of Riverside Drive by the construction of a viaduct over West Ninety-Sixth street.  By chapter 74, p. 170, of the Laws of 1894, the construction of a viaduct on the Riverside Drive over Ninety-Sixth street was authorized.  The act did not provide for any compensation to the owners of property in the vicinity on account of the loss of access to Riverside Drive.  The contract for the construction of said viaduct had been let, and the work thereunder was begun on the 11th day of September, 1900, was half done by the

21st of June, 1901, and was completed in August, 1902. By chapter 626, p. 1529, of the Laws of 1905, it was provided that:

"The board of assessors of the city of New York is hereby authorized and empowered in its discretion to fix, determine and allow the amount of damages sustained by the owners of real property fronting upon Riverside avenue between 95th and 97th streets and upon West 96th street between West End avenue and Riverside avenue in the borough of Manhattan, city of New York, by reason of the elevation of the grade of said Riverside avenue, due to the construction of the viaduct over 96th street in said Riverside avenue."

And the comptroller was required to pay to the respective parties or persons named in said certificate the amount awarded to them and each of them by the board of assessors as aforesaid. The property in question consists of lots Nos. 86, 87, 88, 89, and 90, in block 53, section 4, on the tax map on Ninety-Sixth street. On the 13th day of June 1905, the defendant Pettit filed with the board of assessors his claim for damages to the said property. On the 21st day of February, 1906, plaintiff filed with the said board a claim for damages to said property. The board filed its certificate, dated March 18, 1906, in which, not referring at all to the claim filed by Johnson, it awarded to—

"Le Grand K. Pettit, as owner at the time the damage accrued herein of the premises known and described on the tax maps of the city of New York as lots Nos. 86, 87, 88, 89, and 90, in block 1253, the sum of $25,000, with interest thereon from the 13th day of June, 1905, the date when said claim was filed with the board of assessors. Said sum, with the interest thereon, to be paid by the city of New York to the said Le Grand K. Pettit as and for the damages sustained upon and to the land for which said award is made, by reason of the elevation of the grade of Riverside avenue due to the construction of the viaduct over West Ninty-Sixth street in said Riverside avenue, pursuant to the provisions of chapter 626 of the Laws of 1905."

Thereafter this action in equity was brought by Johnson against Pettit and the city, in which, after setting up the award as made by the board of assessors, the complaint alleged:

"That at the time when said damage caused by the construction of the said viaduct was sustained, and at the time as of which said damage as of right should have been estimated as provided in the said act, the said property claimed to be owned by the said Pettit was in fact not owned by him, but was the property of this plaintiff. That said plaintiff, by reason of his ownership of said lots, is the person who sustained the damage estimated at the amount awarded as aforesaid by reason of the erection of said viaduct. That he is the person to whom the said award should have been made, and is now entitled to the whole thereof. That said plaintiff was the owner of said property at the time of the commencement and of the completion of the construction of the said viaduct."

Wherefore the plaintiff demanded judgment that the defendant the city of New York be enjoined and restrained from paying the said award to the defendant Pettit; that the said plaintiff be declared the owner of and the person entitled to the said award and the whole thereof, together with the interest thereon from February 21, 1905; and that the defendant the city of New York pay the said award, with said interest, to this plaintiff.

The learned court, after trial, dismissed the complaint, and found as conclusions of law that the power of said board of assessors to make the award to the defendant was permissive, not mandatory; that it was, un-

der the provisions of chapter 626, p. 1529, of the Laws of 1905, discretionary with said board of assessors to determine whether the owners of the property did sustain any damages, and, if so, the extent of their damage; that, the said board of assessors having acted judicially within its discretion in determining the date° at which or the period during which damages accrued to the owners of the property aforesaid, said determination cannot be reviewed in this action; that there was no fraud exercised in obtaining the said award; and that the award so made by said assessors was final, and cannot be reviewed in an action in equity.

The date of the contract was August 7, 1900, work was commenced on September 11, 1900, and was about half completed in June, 1901. On the 21st of May, 1901, a contract for the exchange of this property was made by Johnson, the then owner, with the defendant Pettit, under which the deeds were deliverable on the 21st of June, 1901. The closing of the title was adjourned to the 5th day of September, 1901, and the deed, dated as of August 3, 1901, was recorded on September 5, 1901. On July 25, 1902, Pettit conveyed to Metcalf, the agent of Johnson, by deed recorded August 1, 1902, and Metcalf conveyed to Johnson by deed dated July 31, 1902, recorded December 12, 1902, so that at the time of the completion of the construction of the viaduct the title had passed out of · Pettit. The result of the award is that this compensation, authorized by act of the Legislature as upon a moral obligation of the city to pay for consequential damages to property injured by a change of grade to recover, for which there was no common-law or legal right and not incident to any condemnation proceedings, as no part of the land was taken for the proposed improvement, was given to the party who held title from June, 1901, to July 23, 1902, while the owner of the property at the time the original act was passed, at the time the contract was made and the work begun, and half completed, and the owner at the final completion of the work received nothing.

The respondent advances inconsistent reasons to support the judgment. He claims in one breath that a court of equity has no jurisdiction because the act of the board of assessors should be reviewed by certiorari or by mandamus, and in the next breath asserts that certiorari will not lie because the board of assessors were vested with discretion. I think a court of equity has the right to determine as between rival claimants to this fund which one was legally entitled to it. This is not a case where the compensation has been divided. It has all been given to one claimant. I take it that the discretion vested in the board was confined to two propositions: Whether any damage had been sustained by the property; and, if so, how much—which discretion is not to be reviewed by the courts in any proceeding, either by certiorari or mandamus or an independent action in equity. The board did not act as a court. No power of appeal was given. Its discretion as to those two items does not seem to me in any way reviewable. But the Legislature could not have intended that the board of assessors could arbitrarily determine as to the person who should receive the award. If they had determined that a person who had no right or color of right to the premises should receive it, it would be absurd to say that such

action could not be tested in some way, because it would be an unconstitutional exercise of power to make a pure gift of the city's money to anybody. Section 10, art. 8, of the Constitution of the state of New York.

The validity of this act must rest solely upon moral obligation. Of a subsequent act, which provided for compensation to property owners for damages caused by the change of grade of a highway authorized by a preceding act, the Court of Appeals said, in Matter of Borup, 182 N. Y. 222, 74 N. E. 838, 108 Am. St. Rep. 796: ·

"While there was no legal right to damages prior to the act in question, yet the claim of the property owners to compensation for the injury was founded in equity and justice, and it was competent for the Legislature to recognize the justice of such a claim by making it obligatory upon the town to pay it when the amount was ascertained in due course of law. Payment of compensation by the town to the property owners, which the statute provides for, is in no proper sense a gift or gratuity of either the money or property of the town, or a loan of its money or credit to an individual. It is simply a method which the Legislature adopted to repair an injury to an individual inflicted by the town under the authority of law, and the mere fact that the injury was suffered at a time when the property owner was without remedy could not prevent the lawmaking power from providing a remedy afterwards."

Of course, there would be no equity or justice in paying to a stranger to the property an amount of money from the city treasury. When the Legislature said "the amount of damages sustained by the owners of real property," it meant those persons who were the owners according to the rules of law and who sustained the damage to their property according to the rules of law. The determination of the person to receive the award was not within the discretion of the board, but was to be ascertained by well-settled principles of law. In People ex rel. Stephens v. Phillips, 88 App. Div. 560, 85 N. Y. Supp. 200, this court affirmed an order of the Special Term quashing and superseding a writ of certiorari issued to review the decision of the board of revision and assessments, authorized by chapter 711, p. 1547, of the Laws of 1899. Said act empowered said board in its discretion to ascertain and determine the damage to certain real property and to award damages to the owners thereof to the extent that their said real property may have been injured by a change of grade of certain streets. Mr. Justice Ingraham said:

"It appears from this record that after the change of grade in the street the relator acquired property which he alleged was damaged by such change, and that the change of grade was made before the statute was passed. Whatever damage was caused to this property by the change of grade was caused to its owner at the time the change was made. This relator, having purchased the property after such a change had been made, cannot be said to have been in any way damaged or injured when the grade of the street is the same as it was when he purchased the property, and I can see no legal or moral obligation upon the municipality to pay him the damages that were sustained by his predecessor. No part of the relator's property was taken by the public for the street, and certainly it cannot be presumed that he acquired the right of the owners of the property to be paid the damages caused by the change of grade prior to the time that he acquired title."

In King v. Mayor, 102 N. Y. 171, 6 N. E. 395, the award in question was for the closing of Bloomingdale Road. The court held that

the right to the award was attached to the owners of the property at the time of the discontinuance of the road. That road ceased to be a public highway in March, 1868, when Edward and William Henry King were the owners of the premises injured by the closing, who, under the provisions of the statute, became entitled to all damages which might be awarded for the injury done. The right to those at once accrued, and, although they were not fixed and ascertained until after the conveyance by the Kings to Brennan and by the latter to the trustees of the Cathedral, that fact did not alter the character of their right as a personal one vested in them at the closing of the road. When paid it related back to the original debt, which accrued at the time of closing.

It seems to me that, inasmuch as it was the damage caused to the property by a deprivation of access to the Riverside Drive which was to be paid for, when, long after the property had been deprived of said access, the Legislature passed the act allowing compensation therefor, it must be held that it was intended to be given to those persons who owned the property when it was deprived of its access and when the damage accrued. If that moment was not when the law was passed providing for the erection of the viaduct, it must have been when it became certain that the work would be done. Whenever this period be fixed, as at the time of making the contract or at the beginning of the work thereunder, this plaintiff was then the owner of the property. It must be borne in mind that the act was passed three years after the completion of the work. The Legislature could not have intended to leave the determination of the ownership of real property to a nonjudicial board to determine in its discretion. As this court pointed out in People ex rel. Stephens v. Phillips, supra, of a board acting under a somewhat similar statute, there was no provision in this act by which any judicial inquiry was authorized, or which authorized the board to take evidence or to judicially determine the amount to which the property owners would be entitled. It was permissive, rather than mandatory. It was required to keep no record of its proceedings, and so there is nothing to review by way of writ of certiorari.

Under the street opening act (chapter 86, p. 408, of the Revised Laws of 1813), substantially continued in the consolidation act and in the charter, it was provided that the commissioners should set forth the names of the respective owners, lessees, parties, and persons entitled under or interested in the said lands, and the several and respective sums estimated and assessed as and for the compensation and recompense to be made for the loss and damage of the respective owners, and that upon the confirmation of the report by the court it should be final and conclusive, as well upon the said mayor, aldermen, and commonalty of the city of New York, as upon the owners, lessees, persons and parties interested in and entitled under the lands mentioned in the said report, and also upon all other persons whomsoever. Yet, nevertheless, it has been many times held that the finality and conclusiveness of this report so confirmed applies only to the amount of the awards, and not to the persons entitled thereto. And it has been held that an action in equity was an appropriate proceeding to determine the contesting claims of the various claimants, as in Spears v.

Mayor, 87 N. Y. 359, where, in sustaining an equitable action, the court said:

"There were no conflicting questions of fact to be settled, and the case involved merely questions of law upon undisputed facts. Under such circumstances, under our present system of practice, it would have been grossly unjust and improper to turn them out of court upon a mere question of form in no way affecting any substantial right."

In Hatch v. Mayor, etc., 82 N. Y. 436, an award had been made for damages done to premises by a change of grade of a street. The award was not made to the plaintiff, but to one Bowes. It was claimed that the action would not lie. The court said:

"We cannot but think that by the payment to Bowes after knowledge of the dispute of his title the city failed in duty to the plaintiff, and that he has a right to the aid of the courts. We see no reason why he should not have an action for the amount."

As the city holds the fund applicable to the payment of the ascertained damage to the real property in question, and as it appears that the board of assessors has by its certificate awarded said fund to a person not entitled to it, and as it appears that proceedings by way of certiorari will not run to review and correct that determination, it cannot be that a court of equity is powerless, with the parties before it and the facts shown, to apply an appropriate remedy.

It seems to me that the dismissal of the complaint was error, and the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and HOUGHTON, J., concur.  INGRAHAM and LAMBERT, JJ., dissent.