PEOPLE ex rel. HALLOCK et al. v. HENNESSY et al., Board of Assessors of City of New York.

(Supreme Court, Appellate Division, Second Department. October 13, 1911.)

1. MUNICIPAL CORPORATIONS (§ 385*)—PUBLIC IMPROVEMENTS—CHANGE OF GRADE—COMMON-LAW RIGHT TO DAMAGES.

At common law a city was not liable for damages to abutting property caused by a change of grade of a street at a bridge approach.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 925–928; Dec. Dig. § 385.*]

2. MUNICIPAL CORPORATIONS (§ 871*)—"GRATUITIES"

Damages to abutting property owners, caused by a change of grade of a bridge approach, authorized by statute to be paid by a city, do not constitute a gratuity, within the constitutional prohibition against giving "gratuities" from public funds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1817; Dec. Dig. § 871.*

For other definitions, see Words and Phrases, vol. 4, p. 3160.]

3. MUNICIPAL CORPORATIONS (§ 402*)—SPECIAL ASSESSMENT—CERTIORARI.

Laws 1905, c. 582, § 1, authorizes the board of assessors of New York City "in its discretion to estimate and determine damages" which the owners of land abutting upon a certain avenue and adjacent to a creek suffer from the erection of a bridge over the creek; and section 2 requires the amount of such award to be paid by the city. *Held*, that certiorari will not lie to review the award made by the board of assessors after a hearing in which claimants offered evidence; the award by the board not being a judicial act.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 402.*]

Application for certiorari by the People, on the relation of Francis V. Hallock and another, as administrators of the estate of David H. Valentine, deceased, against Joseph P. Hennessy and others, composing the Board of Assessors of the City of New York. Writ dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and THOMAS, CARR, WOOD-WARD, and RICH, JJ.

Benjamin Trapnell (Joseph A. Flannery, on the brief), for relators.
Clarence L. Barber (Theodore Connoly, on the brief), for respondents.

CARR, J.  This is a proceeding by way of writ of certiorari to review a determination of the board of assessors of the city of New York, made under the authority of chapter 582 of the Laws of 1905. It appears from the record before us that prior to 1901 a drawbridge crossed Newtown creek, connecting the borough of Queens with the borough of Brooklyn., As it then existed, this bridge ended on the Queens borough side at Vernon avenue. The approach to that bridge on the Vernon avenue side was about four feet above the level of the roadway, inclining gradually to the sidewalk, so that access to and from the neighboring property was practically undisturbed.  In 1901 the city of New York began the erection of a new bridge across Newtown creek in the same place, and necessarily removed the old drawbridge. The new bridge was completed and thrown open to the public in 1905.  It is what is known as a "bascule bridge," the span over the water being separable at its middle into two parts, both of which are lifted up into the air to enable vessels to pass through.  A change was made in the approaches to the bridge.  On the Vernon avenue side, the approach began some 1,050 feet from the corner of Vernon avenue and Newtown creek, and was carried along on a steel viaduct, which, as it reached Newtown creek, was about 22 feet above the roadway of Vernon avenue. This viaduct was open below, and permitted travel along Vernon avenue to the creek; but it removed substantially all access to and from the bridge to the real property on Vernon avenue where it abutted Newtown creek.  In 1905 the Legislature enacted chapter 582 of the Laws of that year. This act provides as follows:

"Section 1.  The board of assessors of the city of New York is hereby authorized and empowered in its discretion to estimate and determine the damage which the owner or owners of lands and buildings abutting upon Vernon avenue and adjacent to Newtown creek in the borough of Queens have suffered, or will suffer, by reason of the erection and construction of the. bridge over Newtown creek, between Manhattan avenue in the borough of Brooklyn and Vernon avenue in the borough of Queens, and to certify the same to the comptroller of the city of New York, setting forth the amount of the said award with interest.  Said board of assessors shall deduct from any award of damages so made by them any sum or sums of money which they may find as matter of fact have been allowed for consequential damages to the owner or owners of any such lands or buildings by any commissioners of estimate appointed pursuant to provisions of the charter of the city of New York.

"Sec. 2. The amount of such award or awards so certified, shall be paid by the city of New York, and the comptroller is hereby authorized to issue corporate stock of the city of New York to the amount of such award or awards with interest.

"Sec. 3. All acts, or parts of acts, inconsistent with the provisions of this act, are hereby repealed.

"Sec. 4. This act shall take effect immediately."

The relators in this proceeding are the heirs at law of the late Mr. David H: Valentine, who, at the time of his death, owned a parcel of real property at the corner of Vernon avenue and Newtown creek, which fronted on Vernon avenue and likewise upon Newtown creek. On the creek side this property was used as water front property, and on the avenue side it was devoted largely to small stores, such as a liquor saloon, a cigar store, and several other small shops. The relators, acting under the statute aforesaid, presented a claim in writing to the board of assessors of the city of New York, requesting that the damages to their real property be ascertained and certified, as provided in the statute. The board of assessors granted a hearing on the claim, and took the evidence, under oath, of witnesses produced by the claimants, and likewise of witnesses produced by the city of New York. It made an estimate of the claimants' damages in the sum of $15,000.

[1] The claimants attack the justice of this estimate as being wholly inadequate and as being in opposition to the testimony produced at the hearing by both the claimants themselves and the city of New York also. An examination of the record before us shows that the only damages shown by the claimants were such as would arise from a change of grade of the approach to the new bridge. At common law, such damages were not enforceable against the city of New York. The right to recover them in this case depends entirely upon this statute of 1905.

[2] The first question arising for determination in this matter is whether there is any power in the courts to review by certiorari the act of the board of assessors in making its estimate under this statute. The solution of this question rests entirely upon whether the statute cast upon the board of assessors the discharge of a judicial duty. The damages claimed arose from no invasion of any legal right of the property owners. They were authorized by the Legislature solely as arising upon a moral basis. They were not a gift or gratuity in the sense of the constitutional prohibition against gifts or gratuities from public funds. People ex rel. Central Trust Co. v. Prendergast, 202 N. Y. 188, 95 N. E. 715. The right to them, however, was based upon no binding rule of law, but proceeded voluntarily from the conscience of the state. Was there, in their ascertainment or estimate, any rule to be followed other than the same principle which brought them into being, namely, good conscience and good morals? This question is not without authority to guide its solution in this case. It was held in People ex rel. Stephens v. Phillips, 88 App. Div. 560, 85 N. Y. Supp. 200, that where a statute, similar to the one at bar, authorized the board of assessors in its discretion to estimate and determine damages consequential upon a change of grade, but did not prescribe any judicial form or method to control the assessors in their inquiry, their determination as to the amount of damages was not to be viewed as one made in a judicial proceeding, and was not, therefore, subject to review by writ of certiorari.

It is urged, however, that this decision has been limited by Johnson

v. Pettit, 120 App. Div. 774, 105 N. Y. Supp. 730. On the contrary, so far as there was any expression of opinion by the court in the case last cited, the earlier case was approved. In Johnson v. Pettit, ut supra, the only question involved was whether a court of equity would entertain an action to determine conflicting claims to an award of damages made by the board of assessors under chapter 626 of the Laws of 1905, which statute, except that it related to a different locality, was almost word for word the same as the statute here in question. It was held that the court could and should entertain such an action, and one of the reasons assigned for such decision was that, in the language of Clarke, J., writing for the majority of the court:

"I take it that the discretion vested in the board was confined to two propositions: Whether any damage had been sustained by the property; and, if so, how much, which discretion is not to be reviewed by the courts in any proceeding, either by certiorari or mandamus or an independent action in equity. The board did not act as a court. No power of appeal was given. Its discretion as to those two items does not seem to me in any way reviewable."

In Matter of Fitch, 147 N. Y. 334, 41 N. E. 699, it was held by the Court of Appeals that certiorari would lie to review the determination of commissioners appointed under chapter 567 of the Laws of 1894 to estimate the damages of abutting owners resulting from a change of grade of certain specified streets in the city of New York. The court, however, expressly based its decision upon the terms of that statute, saying:

"The question presented must be determined from the provisions of the act."

The act there in question expressly provided rules for the guidance and control of the commissioners appointed to make the estimate of damages. It was provided in the act, among other things, that:

"It shall be the duty of said commissioners, or a majority of them, to inquire into the facts or circumstances relating to any claim filed as aforesaid, and to hear the evidence in support thereof or in opposition thereto, and on every such inquiry and hearing to administer oaths or affirmations to all persons testifying, and after duly considering the evidence, to award such damages to the respective parties filing such claims, as shall be under the circumstances, and on the evidence presented, just and equitable," etc. Section 3.

Unquestionably, these specific directions of that statute indicate conclusively that the Legislature intended that such commissioners should act under and be bound by the ordinary rules governing judicial bodies. They were directed to make an estimate of damages "on the evidence presented." This statute, however, bears little resemblance to that now before us for consideration, and in which there is no direction as to the conduct of an inquiry or a determination "on the evidence presented." The interpretation so made by the Court of Appeals of the act of 1894 has no application to the statute at bar. This act of 1894 was an amendment of chapter 537 of the Laws of 1893, which original statute was again amended by chapter 747 of the Laws of 1905; but no change was made as to the provisions control-

ling the conduct and determination of the commissioners. In its final amended form, it again came before the courts for consideration in People ex rel. City of New York v. Stillings, 138 App. Div. 168, 123 N. Y. Supp. 349, and it was again held that a determination made under it was subject to review by certiorari, and that the commissioners could not supplement the evidence presented to them by a "personal view" of the property affected. As before pointed out, this last-cited decision has no application to the statute now before us.

There remains for final consideration the decision of the Court of Appeals in People ex rel. Heiser v. Gilon, 121 N. Y. 551, 24 N. E. 944, which the relators cite as absolutely controlling upon the question at bar. In that case, chapter 729 of the Laws of 1872 came up for consideration. That act directed the board of assessors of the city of New York to assess upon property benefited by the regulating, grading, and improving of Eighth avenue—

"the amount of damage or injury which each owner of a building or buildings erected on land fronting on said avenue or street, has or will sustain or suffer by reason of such changes of grades and plan of improvement of said avenue heretofore authorized or directed to be made by the Legislature, * * * and shall make and file in the finance department of said city a just and equitable statement and award of the amount of such damage, loss or injury to the owner or owners of such building or buildings on lands fronting on such street or avenue, and opposite thereto and affected by such change of grade, and the amount of such award shall be included in the expense of regulating, grading and improving said avenue, and with such expense for regulating, grading and improving said avenue, shall be assessed, as provided in and by the 175th section of the act of April 9th, 1813, entitled 'An act to reduce the several laws relating to the city of New York into one act.' " Chapter 86 of 2 Rev. Laws 1813.

It was further provided that the comptroller should issue assessment bonds to pay the amount of "such loss or damage so assessed." When the board came to act under this statute, they failed to give notice of hearing to the owners of property · damaged by change of grade, or to afford them any opportunity of being heard in support of their claims for such damages. It was held that the failure to give such notice and to allow such opportunity of hearing invalidated an assessment of such damages made by the board of assessors. The statute did not in terms provide for such notice or opportunity of hearing. The court, however, based its decision on the following statement:

"The duties which the board was required to perform were essentially judicial in their nature and character. The power and duty to determine the amount of loss or injury which the owner of real estate had sustained involved the exercise of judgment and discretion, and the hearing of such proof as the property owners had to offer, and as was pertinent to the inquiry. These judicial functions could not be properly performed, in contemplation of law, without giving to the parties interested in the determination some notice of the time and place of the hearing and an opportunity to be heard."

In its opinion the court said later:

"The only question that we can consider is the regularity of the proceedings of the board in making the determination, and as to that we think that some notice of the time and place of hearing, to enable the property owners

to be heard, was necessary in order to make the determination valid and binding on the parties."

[3] In the case at bar there was a hearing, and the claimants produced all the proof they saw fit to offer. In that respect the Heiser Case differs radically from the one at bar. It seems to us that the two statutes, when compared, differ essentially. In the Heiser Case the estimate of damages was to form the basis of an assessment upon lands benefited by the public improvement. It may be well imagined that the Legislature intended that such damages should be ascertained and fixed, in a judicial method, as otherwise the owners of the land upon which the assessments were to be laid would be liable to be deprived of their property without due process of law. I think that the Heiser Case, ut supra, does not control under the circumstances of this case. It seems to us that the determination made here by the board of assessors is not subject to review by the courts by writ of certiorari, as to the amount of its award.

Our attention is called to several cases in which the city of New York succeeded in reviewing by writ of certiorari the determination of the board of assessors as to damages resulting from a change of grade. The most noteworthy is that of People ex rel. City of New York v. Lyon, 114 App. Div. 583, 100 N. Y. Supp. 62, affirmed without opinion 186 N. Y. 545, 80 N. E. 1136. In that case, however, it was not the amount awarded by the assessors that was in question, but their very power or jurisdiction to make any determination whatever.

The record before us presents no question of irregularity in the procedure of the board of assessors, and no question of abuse of discretion, unless abuse of discretion can be said to arise simply because that body failed to consider itself bound by the testimony of expert witnesses in opposition to its own judgment on a question of values, under circumstances where the exercise of its own judgment was expressly required by the statute which gave the power of making a determination. We think the record before us does not present the question of abuse of discretion.

The writ of certiorari should be dismissed, with costs. All concur, except JENKS, P. J., not voting.