GAS ENGINE AND POWER COMPANY and CHARLES L. SEABURY & COMPANY, CONSOLIDATED, Respondent, *v.* CITY OF NEW YORK, Appellant.

First Department, December 31, 1914.

Municipal corporation — change of grade of street, city of New York — action to recover award — demand — necessity — form of award — established grade need not have been physically made — when award not premature — damages.

An action to recover the amount of an award made by assessors for damages caused by a change of a street grade in the city of New York cannot be maintained until after demand made as required by the charter, and the form in which the assessors saw fit to make the award does not relieve the plaintiff from the requirements of the charter. No interest prior to the date of the demand can be recovered.

An award made by assessors on the change of a street grade is not invalid, as indefinite, because it states that the damages were caused by the erection of the bridge approach, a change in the grade of a certain street, " or " the closing or partial closing of said street. The use of the disjunctive is not fatal, for, if necessary to support the award, the word "or " can be read as "and." It is not necessary that the certificate should state the different elements of damage in detail.

In order that damages may be awarded for injury caused by the change of a street grade it is not necessary that the legally established grade which is changed by the improvement be first physically constructed. Recovery may be had where the first physical grading of the street is made upon a new and changed grade.

An abutting landowner who is injured by the change of street grade in the city of New York need not await the final completion of the work before seeking compensation, and the award may be made, although the improvement has not been finally completed, where the improvement is an entirety and is in the course of construction, so that the street is already obstructed and there was no initial claim that the proceedings were premature. The right to compensation accrues when it becomes certain that the work will be done.

Award examined, and *held*, not to be excessive.

APPEAL by the defendant, City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of April, 1914, upon the report of a referee appointed to hear and determine the issues.

*Charles J. Nehrbas* [*Terence Farley* of counsel], *Frank L. Polk, Corporation Counsel,* for the appellant.

*John F. Brennan,* for the respondent.

Judgment affirmed, with costs, on opinion of referee.

Present — INGRAHAM, P. J., McLAUGHLIN, SCOTT, DOWLING and HOTCHKISS, JJ.

The following is the opinion of the referee:

EDGAR M. CULLEN, Referee:

The plaintiff about the year 1888 was the owner of a tract of land lying on the north side of One Hundred and Seventy-seventh street between the right of way of the New York Central and Hudson River Railroad Company and the Harlem river extending northward some 1,200 feet. One Hundred and Seventy-seventh street appeared on the maps of that territory first as Dashwood place and later as Dock street. On December 17, 1895, the commissioner of street improvements of the twenty-third and twenty-fourth wards of the city of New York filed in the office of the register of the county of that name a map made by the board of street openings and improvements of said city, showing the location of lines, grades, streets, roads, avenues and public sewers in a section of said wards. On that map appeared One Hundred and Seventy-seventh street and also the intended grade thereof, which was from one to two feet above the surface of the land. As early as thirty-five years ago there had been a traveled road from the railroad over One Hundred and Seventy-seventh street as far as the land was filled in, thence south to a steamboat wharf, which was constantly used and traveled by the public as a means of access from the wharf to the back country. About 1888 or 1889 the city placed on the line of said street a fire hydrant and later a public lamp. In 1902 the street was opened to the river through proceedings by which the defendant acquired title thereto. The street was not regulated or paved, but it continued to be used by the public at its old grade. Thereafter, in 1903 and 1905, the Legislature determined that the grade crossings of

several streets across the railroad, including One Hundred and Seventy-seventh street, should be eliminated (Laws of 1903, chap. 423, as amd. by Laws of 1905, chap. 634), and for that purpose prescribed that the railroad company should at its expense construct the necessary bridges and abutments to carry the streets over the tracks, while the city should, at its expense, make the necessary changes in the streets and avenues, and acquire and construct all approaches to bridges, and pay all damages to land and buildings fronting on that portion of the street or avenue closed or whose grade should be changed, which damages should be ascertained and awarded by the board of assessors of the city. The railroad company was required to submit plans and profiles of the improvement to the board of estimate and apportionment of the city of New York for its approval, one copy, when approved, to be filed with the board of estimate and apportionment of the city of New York. In pursuance of this act, in 1905, the railroad company and the board of estimate adopted plans for the improvement. The effect of this was to raise the grade of the street where it crossed the railroad. In pursuance of this act the railroad company submitted plans for the improvement (in which subsequently some slight and unsubstantial changes were made), which were approved by the chief engineer of the city and the president of the borough of The Bronx, but the approval of the board of estimate was not obtained until later. Contracts for doing the work were awarded by the city and the railroad company, by the former in July, 1905, and by the latter in March, 1905. By this plan the street was carried over the railroad at an elevation of some twenty-four feet. From that point westerly the street was carried by a viaduct falling at the rate of four and a half feet in a hundred. For some seventy feet this viaduct consisted of open bridgework. Beyond that, to the west, it consisted of solid filling, held up by retaining walls on each side. Towards the westerly end the viaduct turned to the south and fell till it reached the old grade. On May 25, 1906, the plaintiff presented its petition to the board of assessors asking for an award of damages for the closing and changing of the grade of the street. On November sixteenth of that year the said board made its certificate whereby it

awarded to the plaintiff the sum of $310,000, with interest thereon from the 1st of September, 1905. The time to review such award was extended from time to time, but no proceedings have ever been taken to review it.

An action to recover the amount of an award by the assessors for damages caused by change of grade of a street cannot be maintained until after demand made (Charter, § 953),* and the form in which the assessors saw fit to make their award cannot relieve the plaintiff from the requirements of the charter. Hence, it can recover no interest prior to March 23, 1912, the date of demand.

The first objection of the defendant to the validity of the award is that it is indefinite because it states that the amount specified is awarded for damages caused "by reason of the erection of the approach to and over the tracks, * * * the changes in the grade of said 177th Street, or the closing or partial closing of said 177th Street." It is claimed that it should have stated for which of said causes of injury the award was made, and that as the disjunctive is used the award is made for one only of such injuries, not for all, and that the defendant is open to still another claim. I think this claim is far too technical. "Or" can easily be read as "and" if that is necessary to support the award. But in reality the purport of the certificate is plain. The award is intended to include all damages caused by the improvement to the street, apart from nomenclature, whether it be called a closing or a change of grade, each of which, technically, it probably was in part. It was not necessary that the certificate should separate and specify in detail what were the different elements of damage. (*People ex rel. Heiser* v. *Gilon,* 76 Hun, 346; affd. on opinion below, 148 N. Y. 763.)

The next objection is that the improvement effected no change of grade in One Hundred and Seventy-seventh street, because the street had never previously been graded. To effect a change of grade two things are necessary; the first that there shall have been a previously established grade; second, that a new grade should be physically made. The fact that

* Laws of 1901, chap. 466, § 953.—[REP.

the street may not have been graded to its legally established grade does not prevent a new grade from being a change of grade. While the award in suit was not made under any provision of the charter, still those provisions show what a change of grade is. Under section 950 * the liability is for "changing a grade once established by lawful authority," and lawful authority is where the grade was "originally adopted by the action of the public authorities," or the street has been used and worked by the public authorities for twenty years. Reliance is placed by the learned counsel for the defendant on the case of *People ex rel. Astor* v. *Dickey* (157 App. Div. 794). In that case the learned justice says: "It is manifest that in order to be entitled to an award for damages for a change of grade, a property owner must show that there was a graded street in existence before the new grade was established." I do not understand that this is an intimation that a street must be graded to its first or originally established grade to entitle the owner to compensation for a change of the original grade. A reference to the record shows there was no such question in the case. The point on which the case was decided was that there was no such street but merely a paper plat of a street before the actual improvement for which the relator sued to recover compensation. The expression "a graded street in existence" means a street with an established grade, not necessarily a street that has been physically constructed at the established grade. If that were the rule, no person who improved his property abutting on an open street, on the faith of a grade lawfully established by the authorities, would be entitled to compensation if the street had not been once regulated and constructed at such established grade. On the contrary, many if not most cases where recovery has been had are where the first physical grading of the street has been upon a new and changed grade.

The final objection of the defendant is that the award was void because at the time it was made the improvements had not been completed. As already said, the contracts of both parties, the city and the company, at whose expense the improve-

---

* *Sic.* See Laws of 1901, chap. 466, § 951, as amd. by Laws of 1912, chap. 483.—[REP.

ments were to be made, had already been let for the work. The company's share of the work, indeed, had been completed. The bridge and its abutments had been built and a new station constructed at the new grade of the street. To gain access thereto temporary wooden approaches on One Hundred and Seventy-seventh street had been constructed by the railroad company for which the city afterwards paid, as it was part of its share of the work. While the first plan was modified, it was in trivial details, and, as a matter of fact, it was the modified plan which was before the board of assessors and upon which the award was made. The defendant contends that no award could be made; in fact, that no application could be entertained until after the completion of the work, and to support the claim cited the case of *People ex rel. Janes* v. *Dickey* (206 N. Y. 581). What was decided in that case was that the damages caused by the change of grade of a street accrued when the grade was actually changed and were payable to who might be the owner at that time. But the case does not hold that the proceeding cannot be initiated before the completion of the improvement. The decision proceeds on the theory that until the change is made there is room for another change, and the newly declared grade may never be actually made. Before the completion of an entire improvement a particular abutter may suffer all his damage. It may be that the statute will not commence to run against his application for compensation till after the completion of the improvement, but it does not at all follow that he is bound to await such completion before he seeks relief. True, the city may change the new grade before the work is completed, but that would not relieve it for damage already done to him. In this case the improvement was an entirety; part of it, the company's part, had already been done. The street had been already obstructed to a certain extent, so it may be truly said that the improvement was in the course of prosecution. It is proved by the engineer that the award was made on the modified plans. The city made no claim before the board of assessors that the proceeding was instituted prematurely, and there is no question here between successive owners. It seems to me that under these circumstances it would be giving effect to mere technicalities

to hold the award invalid. But even these technicalities, I think, are not well supported by the authorities. The true rule it seems to me, is that stated by Mr. Justice CLARKE in *Johnson* v. *Pettit* (120 App. Div. 774) as to the time when the right to compensation accrues: "If that moment was not when the law was passed providing for the erection of the viaduct it must have been when it became certain that the work would be done." The present case falls far within that rule.

Finally, it is suggested that the award is extravagant. It is sufficient answer to this to say that the defendant has made no attempt to review it, though the time for such review was often extended. There is no suggestion of fraud or collusion in making the award. Its amount is $310,000. One of the defendant's own witnesses fixed the damage done to the plaintiff's property at $259,000. It seems to me that in view of this evidence it is idle to claim that the award is excessive or extravagant.

Judgment should be rendered to plaintiff for the amount of the award, with interest from the date of the demand, each party to submit findings within twenty days.