THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANCES V. HALLOCK et al., as Administrators of the Estate of DAVID H. VALENTINE, Deceased, Appellants, *v.* JOSEPH P. HENNESSY et al., Composing the Board of Assessors of the City of New York, Respondents.

Construction of statutes — rule for construing a statute, if meaning thereof is doubtful — New York (city of) — construction of statute (L. 1905, ch. 582) authorizing board of assessors of New York city to estimate and determine, in their discretion, damages to landowner caused by erection of a bridge.

1. A statute should receive a reasonable construction, so as to give effect to the object of the legislature, and if the meaning is doubtful

such a construction, if possible, as will not lead to unreasonable results.

2. By chapter 582 of the Laws of 1905 the board of assessors of the city of New York was " authorized and empowered *in its discretion* to estimate and determine the damage which the owner or owners of lands and buildings abutting " upon a certain street have suffered or will suffer from the erection of a bridge theretofore authorized to be built. Upon petition by a property owner the assessors proceeded to hear the matter and a regular trial was had and an award was made. *Held,* that the board had power to take up the claim, or not, in its discretion, and if it had refused, the landowner would have been without remedy, as the discretion expressly given to the assessors would have excluded review by the courts; that after the assessors assumed jurisdiction, their action was judicial in nature, and, therefore, subject to review by the Appellate Division as to the amount of the damages awarded.

*People ex rel. Hallock* v. *Hennessy,* 146 App. Div. 440, reversed.

(Argued March 25, 1912; decided April 30, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 17, 1911, which dismissed a writ of certiorari issued to review a determination by the board of assessors of the city of New York.

David H. Valentine, a resident of the borough of Brooklyn, died on the 21st of December, 1910, intestate, and the relators are the administrators of his estate. For some years prior to his death he owned a parcel of land at the corner of Vernon avenue and Newtown creek, the part facing the latter being used as water-front property, and that facing the former for small stores and shops.

Prior to 1901 a drawbridge connecting the boroughs of Brooklyn and Queens crossed Newtown creek and ended at Vernon avenue. The approach to the bridge on the Queens borough side was about four feet above the level of the roadway, inclining gradually to the sidewalk. In 1901 the city of New York began to erect a new bridge in the same place, which required a change to be made in the approaches. A steel viaduct was constructed on the

Vernon avenue side over one thousand feet long, and as it reached the creek it was about twenty-two feet above the roadway of the avenue. It was open below so as to permit travel on the avenue to the creek, but prevented all access to the bridge from the property in question where it joined the creek.

The structure was not completed until 1905, and during that year the legislature passed an act known as chapter 582, which provides that "The board of assessors of the city of New York is hereby authorized and empowered *in its discretion* to estimate and determine the damage which the owner or owners of lands and buildings abutting upon Vernon avenue and adjacent to Newtown creek in the borough of Queens have suffered, or will suffer, by reason of the erection and construction of the bridge over Newtown creek, between Manhattan avenue in the borough of Brooklyn and Vernon avenue in the borough of Queens, and to certify the same to the Comptroller of the city of New York, setting forth the amount of the said award with interest. Said board of assessors shall deduct from any award of damages so made by them any sum or sums of money which they may find as matter of fact have been allowed for consequential damages to the owner or owners of any such lands or buildings by any commissioners of estimate appointed pursuant to provisions of the charter of the city of New York." The statute provided for the payment by the city of New York of the "amount of such award or awards so certified" and repealed "all acts, or parts of acts, inconsistent with" its own provisions, but contained nothing of substance, except as stated.

In 1907 Mr. Valentine presented a petition to the board of assessors setting forth the facts and, without specifying any amount, asked for a just and equitable award for the damages caused to his property by the erection of the approach to the new bridge. The board took up the matter, a regular trial was had, evidence both oral and

documentary was received, and in May, 1911, an award was made of $15,000 with interest from October 17th, 1905. Mr. Valentine having died, his administrators sued out a writ of certiorari to review the award as inadequate, but the Appellate Division dismissed the same "as matter of law and not as matter of discretion" upon the ground that the determination made by the board of assessors was not subject to review by the courts through a writ of certiorari as to the amount of the award. The relators appealed to this court.

*Benjamin Trapnell* and *Joseph A. Flannery* for appellants. The decision of the board of assessors was reviewable under section 2140, Code of Civil Procedure, and the Appellate Division was vested with power to look into the evidence. (*People ex rel. McAleer* v. *French,* 119 N. Y. 502; *People ex rel. Clarke* v. *Roosevelt,* 168 N. Y. 488; *People ex rel. Heiser* v. *Gilon,* 121 N. Y. 551; *People ex rel. Purdy* v. *Fitch,* 147 N. Y. 334; *Matter of Tobin,* 53 App. Div. 433; 164 N. Y. 532; *Osborn* v. *U. S. Bank,* 9 Wheat. 738; *Matter of Titus St.,* 139 App. Div. 238; *People ex rel. City of New York* v. *Stillings,* 138 App. Div. 168.) The discretion conferred upon the board of assessors was, at the utmost, a discretion as to whether it should assume jurisdiction, and not a discretion to award any amount of damages, large or small, as it saw fit. (*East* v. *B. H. R. R. Co.,* 195 N. Y. 409; *People ex rel. City* v. *Lyon,* 114 App. Div. 583; 186 N. Y. 545; *People ex rel. City* v. *Lawrence,* 48 Misc. Rep. 52; *Matter of City of New York,* 128 App. Div. 150; 195 N. Y. 527; *Matter of Tobin,* 53 App. Div. 433; 164 N. Y. 532; *Stuart* v. *Palmer,* 74 N. Y. 183; *Hathorn* v. *N. C. G. Co.,* 194 N. Y. 342; *People ex rel. Janes* v. *Stilling,* 197 N. Y. 548.)

*Archibald R. Watson, Corporation Counsel* (*Charles J. Nehrbas* and *Terence Farley* of counsel), for respond-

ents.  The question involved in this appeal is not review-
able in any court.  (*Sauer* v. *City of New York*, 180
N. Y. 27; 206 U. S. 536; *People ex rel. City of New
York* v. *Stillings*, 138 App. Div. 168; *People ex rel.
Stephens* v. *Phillips*, 88 App. Div. 560; *Johnson* v. *Pet-
tit*, 120 App. Div. 774; *Matter of Simmons*, 132 App.
Div. 574; *City of Syracuse* v. *Stacey*, 45 App. Div. 249;
*Matter of B. U. E. R. R. Co.*, 113 App. Div. 817.)

VANN, J.  The question presented by this appeal is
whether the Appellate Division had power to review the
amount of the award in question.  The award rests
wholly on the act of 1905, because damages arising from
a change of grade in a public highway cannot be recov-
ered at common law.  (*Radcliff's Exrs.* v. *Mayor, etc.,
of Brooklyn*, 4 N. Y. 195.)  The legislature, however,
has power to recognize claims founded on a moral obli-
gation and it exercised the power in passing said act.
(*People ex rel. Central Trust Co.* v. *Prendergast*, 202
N. Y. 188.)  It did not make a gift to the landowners but
acting upon the appeal to the conscience of the state
"authorized and empowered" the board of assessors of
the city of New York, "in its discretion to estimate and
determine the damage" sustained by reason of the con-
struction of the bridge.  The meaning of the words "in
its discretion" as used in the statute is so doubtful as to
require construction.

The learned Appellate Division was of the opinion that
owing to those words the statute did not involve the dis-
charge of a judicial duty by the board of assessors and
that in estimating the damages there was no rule to be
followed other than the principle of good conscience and
good morals which brought them into being.  (146 App.
Div. 440.)

During the hearing which took place before the board
of assessors evidence was given in behalf of the relators
tending to show that the damages sustained amounted

to upwards of $60,000, while evidence was given in behalf
of the city tending to show that the damages were at
least the sum of $29,471. That was the lowest estimate
made by any witness on either side. The amount of the
award as made was $15,000. It is obvious that if the
assessors acted judicially a question was presented for
determination by the Appellate Division in relation to the
amount of the award. If, on the other hand, as claimed
by the respondents, the discretion of the board as to the
amount of damages was so absolute that it could disre-
gard the evidence and arbitrarily fix a sum without any
evidence to support it or to award one owner generous if
not excessive compensation and another no compensation
at all, then they did not act judicially, and no question
was presented for review.

The statute should receive a reasonable construction,
so as to give effect to the object of the legislature, and if
the meaning is doubtful, such a construction, if possible,
as will not lead to unreasonable results. (*East* v. *Brook-
lyn Heights R. R. Co.*, 195 N. Y. 409.) Its object was to
convert a moral obligation into a legal or equitable right,
subject, however, to a discretion of some kind to be exer-
cised by the board authorized and empowered to esti-
mate and determine the damages. What was that dis-
cretion ? I think that the statute clothed the board
of assessors with power to act or not " in its discre-
tion," and that its discretion extended no further. The
legislature, apparently, was in doubt whether the
claims should be considered at all, so it did not require
the board to pass upon them, but authorized it to take
them up in its discretion. If, upon considering the sub-
ject, the assessors thought the damages were so sub-
stantial as to call for compensation, they were empow-
ered to estimate and determine the amount, while if they
were so slight as to be unworthy of consideration by
reasonable and experienced men, they could exercise their
discretion by refusing to consider them. This was a

wide discretion, but not altogether unwise, as the assessors could tell better than the legislature whether action on the claims was called for. It did not throw the door wide open to arbitrary action whereby absurd and unjust awards could be made, giving to one owner nothing and to another an excessive amount, although the claims were of equal merit. Authority to decide whether the claims had general merit enough to make it worth while to assume jurisdiction of the subject of damages is quite different from power to reward friends and punish enemies by dealing out the money of the city in unlimited discretion without the guide of evidence or law. The power of the legislature to delegate its authority is as open to objection on the one theory as the other, for an absolute discretion as to amount gives power to award nothing on a claim with merit and a substantial sum on a claim without merit. This question, however, was not raised and cannot be considered upon this appeal, which involves simply the right of the Appellate Division to review the *amount* of the award. I think the discretion applied to the taking up of the claims and not to the amount of damages in case they were passed upon at all. The language used not only admits of this construction, but, as used, it is the more logical because the word "discretion" is directly connected with the words "estimate" and "determine," and only remotely with the word "damage." The board was authorized "in its discretion to estimate," not to estimate the damage in or according to its discretion. As thus construed the statute is not without precedent in legislation.

The board, therefore, had power to take up the claims or not, in its discretion, and if it had refused, the landowners would have been without remedy, as the discretion expressly given to the assessors would have excluded review by the courts. The claims, however, were in fact taken up and thus the question arises whether the action of the assessors in making awards was judicial in its

nature.   While neither notice nor hearing was expressly
required by the statute, I think that both were required
by implication from the nature of the duty to make an
award of damages and the established practice in such
matters which the legislature is presumed to have had in
mind and in the light of which it passed the act.   (*People
ex rel. Heiser* v. *Gilon*, 121 N. Y. 551.)   A hearing
implies evidence and a trial, formal or informal.   An
award in law means a judgment or finding upon a dis-
puted matter submitted for decision.   Even a mere esti-
mate of damages is necessarily in the nature of a judicial
act, for it requires the finding of a fact through the exer-
cise of judgment upon evidence of some kind.   The duty
to "find as matter of fact" the sum already allowed for
consequential damages, if any, and to deduct it from
their award indicates that the assessors were also to find
as matter of fact the net amount of damages sustained.
It was not the intention of the legislature that they
should act judicially as to part of their duties only.

We recently had before us a similar statute, which
authorized an award but was silent as to the procedure,
neither notice nor hearing being expressly required in
estimating the damages.   (L. 1872, ch. 729.)   After the
damages were awarded, however, they were to be assessed
upon the property benefited according to the provisions
of another statute, which required notice and a hearing.
(L. 1882, ch. 410, § 871.)   We held that "there were two
distinct and separate proceedings before the board, the
result of which is expressed in two papers, namely, the
certificate of award as to the damages, and the assessment
list as to the expenses and benefits."   All the judges
united in saying: "After the damages to the property
owners had been ascertained, then the assessors were to
proceed in assessing them upon the property benefited,
according to the procedure prescribed" by another act.
"The statute, however, is silent as to how the assessors
were to proceed in ascertaining the damages which the

property owners had sustained, and no provision is made for notice to them or for a hearing. The duties which the board was required to perform were essentially judicial in their nature and character. The power and duty to determine the amount of loss or injury, which the owner of real estate had sustained, involved the exercise of judgment and discretion, and the hearing of such proof as the property owners had to offer, and as was pertinent to the inquiry." (*People ex rel. Heiser* v. *Gilon*, 121 N. Y. 551, 556. See, also, *Matter of Fitch*, 147 N. Y. 334.)

I think that after the assessors assumed jurisdiction their action was judicial in nature, and, therefore, subject to review by the Appellate Division as to the amount of the damages awarded. While that learned court might not have been bound even by the lowest estimate of any witness called by the city, it was its duty to review the question of fact decided by the assessors as to the amount and to reverse their determination if it was regarded as wrong under all the circumstances. (*People ex rel. McAleer* v. *French*, 119 N. Y. 502, 507.) That court refused to review the amount and we cannot correct the error, because jurisdiction in that respect has not been conferred upon us. The order of the Appellate Division should, therefore, be reversed, with costs, and the proceeding remitted to that court with instructions to proceed according to law.

GRAY, J. (dissenting). The relators, appellants upon this appeal, were the owners of property upon Vernon avenue and Newtown creek at the time when a new bridge was constructed by the city over the creek. The approach to the old bridge was raised about four feet above Vernon avenue; but that to the new bridge consisted in a steel viaduct, about twenty-two feet above the roadway and about 1,050 feet in length. The new bridge was completed in 1905 and these relators presented to the board of assessors of the city of New York a claim for damages, as owners

of the lands and buildings abutting upon Vernon avenue.
This claim was made under the provisions of chapter 582
of the Laws of 1905, which had been enacted with relation
to any claims based upon the effect of the new construc-
tion.   The board gave a hearing upon the claim and
made an award of $15,000.   This was not satisfactory to
the relators, who sued out a writ of certiorari to review
the determination of the board; alleging the inadequacy
of the award upon the evidence of damage.   The Appel-
late Division, in the second judicial department, before
which court the matter came on to be heard, dismissed
the writ; as matter of law and not of discretion.   It was
considered by that learned court that the determination
of the board of assessors was not the subject of review by
the courts; inasmuch as the statute did not cast upon
that body "the discharge of a judicial duty." The
question, therefore, which this appeal, alone, presents, is
whether the proceeding before the board was of that judi-
cial character, which rendered the determination reached
reviewable by writ of certiorari, and, in order to ascertain
that, the language of the statute must be resorted to
and not those general principles, which pertain to the
procedure of tribunals of a judicial, or quasi judicial,
nature.   (*Matter of Fitch*, 147 N. Y. 334, 337.)   Section
1 of the act reads as follows: "Section 1. The board of
assessors of the city of New York is hereby authorized
and empowered in its discretion to estimate and determine
the damage which the owner or owners of lands and
buildings abutting upon Vernon avenue and adjacent
to Newtown creek in the borough of Queens have
suffered, or will suffer, by reason of the erection and con-
struction of the bridge over Newtown creek, between Man-
hattan avenue in the borough of Brooklyn and Vernon
avenue in the borough of Queens, and to certify the
same to the comptroller of the city of New York, setting
forth the amount of the said award with interest.   Said
board of assessors shall deduct from any award of dam-

ages so made by them any sum or sums of money which they may find as matter of fact have been allowed for consequential damages to the owner or owners of any such lands or buildings by any commissioners of estimate appointed pursuant to provisions of the charter of the city of New York." The second section provides that the amount of such award, so certified, "shall be paid by the city of New York, and the comptroller is hereby authorized to issue corporate stock of the city of New York to the amount," etc. It will be observed that the act makes no direction for a hearing, or as to the form, or method, of the inquiry by the board and it makes no provision for any review, or appeal, from a determination.

The relators not having suffered from any actual invasion, or taking, of their lands, had no enforcible claim against the municipality for any damage resulting from the change of the grade of the street. Their ownership was subject to the public right to make the change, when deemed a necessary improvement of the street. (*Sauer* v. *City of N. Y.*, 180 N. Y. 27.) In passing the act in question, the legislature recognized, at most, a moral obligation to make compensation, if injury had, in fact, resulted, and, in enacting upon the subject, it was, exclusively, for the legislature to provide by whom, to what extent and in what manner an award of compensation should be made. This may not be likened to a case, where the statute has clothed a body with authority to do an act, which concerns and affects the legal rights of a person. In such a case, though the language of an enactment may be permissive, it will be construed as imperative and the performance of the duty enjoined becomes judicial in its nature, when involving a hearing and determination upon a question of the person's property rights. (*Mayor, etc., of N. Y.* v. *Furze*, 3 Hill, 612.) But, in this case, the relators had no rights, which the law recognized. When the legislature enacted this statute, it gave to them the right to prefer this claim for damages.

By it they acquired no right to any damages; they obtained, *ex gratia*, the appointment of a body, which might consider their claim to be entitled to damages and might act upon it. The legislature chose to commit the whole matter to the " discretion" of the board of assessors and that discretion extended to considering the claim and to making a determination upon it. The board was " authorized and empowered *in its discretion* to estimate and determine the damages," which the owners of lands have suffered, or will suffer. If that body made an award, it was to " certify the same to the comptroller," less the amount of any consequential damages, which commissioners of estimate may have allowed, and the city was directed to pay it. The amount of the award was not to be included in any assessment upon lands benefited; it was to be paid by the city at large. How, in view of the language of this act, can it be said that any inquiry of a judicial nature was prescribed, or authorized, even, by the legislature ? The evident intent of the enactment is that the board of assessors should exercise their discretion, when a claim was presented, whether to consider it and at what amount to estimate it. It must have been in contemplation that the inquiry, as a discretionary one, would be informal; for the act is bare of directions as to the inquiry, or mode of procedure.

In *Matter of Fitch*, (*supra*), a review by certiorari of the determination of commissioners appointed to estimate the damages of abutting owners, resulting from changes of grades of streets, in the city of New York, was upheld upon the language of chapter 567 of the Laws of 1894, in question there. The particular language under consideration was that conferring " exclusive jurisdiction to estimate the loss and damage " upon the commissioners and it was argued that, thereby, their award was not subject to review. It was decided that, under the act, this language, while giving exclusive jurisdiction to estimate the loss, must be considered in connection with

other requirements as to procedure. The act provided that it should be the duty of the commissioners "to inquire into the facts or circumstances relating to any claim * * * to hear the evidence in support thereof or in opposition thereto, and on every such inquiry and hearing to administer oaths or affirmations to all persons testifying, and after duly considering the evidence, to award such damages * * * as shall be under the circumstances, and on the evidence presented, just and equitable," etc. These requirements of the act were deemed to be significant and exclusiveness of jurisdiction, therefore, related only to the power to estimate. In *People ex rel. Heiser* v. *Gilon,* (121 N. Y. 551), the board of assessors were directed to assess upon the property intended to be benefited by the regulating and grading of Eighth avenue, in the city of New York, the amount of damage sustained by the abutting landowners, by reason of changes of grades, and they were to make awards of such damages; which awards were to be included in those expenses of regulating and grading that were to be assessed. The board failed to give notice of a hearing to the owners of property damaged by changes of grade and that was held to invalidate the proceeding. The duties devolved upon the board were held to have been judicial in their nature and, for their proper performance, required the giving of an opportunity to be heard. The statute in that case differed in essential particulars. · The matter of awarding damages to claimants was not committed, solely, to the discretion of the board. Then, again, it was not committed as a single matter for their action; but it was a part of a plan of procedure, by which, in assessing property for the expense of street improvement, awards for damages should be made and their awards included in the assessment. Obviously, as I think, the proceeding was, throughout, of a judicial nature and cannot be likened to the present one. In this case, of course, there was no question as to full opportunity to be heard. In

the case of *People ex rel. Stephens* v. *Phillips*, (88 App. Div. 560), in considering an act similar to the one now under consideration, in its committing the matter of awarding damages to the "discretion" of the board, the Appellate Division, in the first department, held·that the action of the assessors was not subject to review by certiorari.

I think that, in authorizing and empowering the board "in its discretion to estimate and determine the dam·age," the legislature made its determination conclusive; whether that determination was to refuse to consider a claim, or whether it was one fixing·the amount of an award.

I think the order appealed from should be affirmed, with costs.

CULLEN, Ch. J. (dissenting). While I concur in the opinion of Judge GRAY for the affirmance of the order before us, I appreciate that there·can be different views entertained as to the effect of the discretionary power granted by the statute to the board of assessors upon the question whether the award made by that body is sub·ject to review. But from the theory upon which the reversal of the order of the court below is about to proceed—that the discretion vested by the statute is as to the question whether the board of assessors should entertain the claim of the relator, not as to the decision of the claim after it has been entertained—I wholly dissent. The location of the words "in its discretion" in the sentence of the statute which confers authority upon the board is not controlling. We at times read and quite often hear that a murderer "was sentenced to be hanged by Judge A." The statement may provoke a smile from the grammarian, but there can be no doubt as to what function is intended to be attributed to the judge. If the statute is to be construed as contended, I have grave doubts of its constitutionality. It is said that as the

statute clothed the respondents with power to act on the claim in their discretion, if they had refused to take action thereon, such determination would not be subject to review. But it is further said that if they entertain a claim the determination of it is a judicial proceeding as to which the statute confers no discretion. It is also said that the action of the legislature in authorizing an award of damages for property injured by the change in the approach to the bridge, was not the conferring of a gratuity, but the recognition of a moral claim which it was within the power of the legislature to do. If these three propositions are correct, the result is that by the statute the legislature has not recognized the equitable claims to compensation of the parties injured by the improvements, but has left it to the discretion of the respondents to determine, not whether the claims are meritorious and equitable, but whether even if both, they shall be entertained at all. In other words, the legislature itself does not enact that equitable rights shall become legal claims, but has committed that to the board of assessors. This seems to be a delegation of legislative authority which is unauthorized. The case is not similar to that of a statute which grants to municipalities administrative powers to be exercised or not in the discretion of the municipal officers, such as authority to buy a park. The view of the statute before us sought to be maintained is that the statute creates a legal right, provides a tribunal to hear and determine it, and, therefore, such hearing and determination is necessarily judicial, while at the same time the legal existence of the claim is left to the arbitrary discretion of the board of assessors.

The suggestion that this objection will apply with the same force to one construction of the statute as to the other ignores the distinction between two different functions: One, that of the recognition of an equitable claim and the direction for its payment if established, which is

a legislative act (*Cole* v. *State of N. Y.*, 102 N. Y. 48; *O'Hara* v. *State of N. Y.*, 112 id. 146; *Wrought Iron Bridge Co.* v. *Town of Attica*, 119 id. 204), and the other, the audit and allowance of the claim, a function that always could be delegated and which under the present Constitution must be delegated, for article 3, section 19, forbids the legislature from auditing or allowing any private claim against the state, and its authority seems no greater against municipalities. (*Matter of Greene*, 166 N. Y. 485.) As to the further suggestion that the point was not raised in the court below, the answer is that it is not now contended that the statute is unconstitutional, but that the proposed construction would make it unconstitutional, and, therefore, must be rejected, which is a mere matter of argument. That an award of commissioners may be made conclusive and not subject to review is settled by the decision of this court in *Matter of Prospect Park & Coney Island R. R. Co.* (85 N. Y. 489). (See, also, Lewis on Eminent Domain [3d ed.], sec. 788.)

As already said, I have doubts as to the constitutionality of the statute under such a construction, but granting that under that construction the statute would be constitutional, it seems to me it is an unnatural construction to be given it. It seems a much more reasonable construction that the discretion given the board of assessors relates to the determination of the claim, its justice and amount, and not to the duty of the board to entertain it. The general principle of statutory construction is well settled. A statute permissive in terms will be construed as mandatory where there is a duty to exercise the power conferred. (Potter's Dwarris on Statutes, p. 220; Sutherland on Stat. Construction [1st ed.], sec. 460.) In *Mayor, etc., of N. Y.* v. *Furze* (3 Hill, 612, 615) Chief Justice NELSON said: "Where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though

the phraseology of the statute be permissive merely, and not peremptory." (See, also, *People ex rel. Otsego Co. Bank* v. *Supervisors of Otsego Co*, 51 N. Y. 401.) Therefore, according to well-settled canons of construction, the duty of the respondents to hear a claim should be considered mandatory and their determination of its justice and amount discretionary, and not the reverse. Judicial tribunals do at times decline to entertain certain controversies, as, for instance, a court of equity a case where there is an adequate remedy at law, or a case for an accounting of an estate where the Surrogate's Court can afford full relief; but the action of the court in refusing to entertain the case is just as much a judicial decision as would have been the determination of the merits of the controversy had the case been entertained.

WERNER, HISCOCK and COLLIN, JJ., concur with VANN, J.; HAIGHT, J., concurs with CULLEN, Ch. J., and GRAY, J.

Order reversed, etc.