JAMES E. HACKETT *v.* SUELLEN HACKETT ET AL.

SUPERIOR COURT        JUDICIAL DISTRICT OF        FILE No. 281784
                          NEW HAVEN

Memorandum filed October 12, 1990

*Alan E. Silver, P.C.,* for the plaintiff.

*Michael J. Daly III* and *M. Leonard Caine,* for the named defendant.

---

[2] $168 + $488 = $656 × .41 × .75.

HON. ARTHUR H. HEALEY, STATE TRIAL REFEREE. This particular action comes before this court in an unusual posture. The plaintiff, James E. Hackett, initiated this action in March, 1989, against the defendant Suellen Hackett, his former wife, seeking a partition[1] of certain real estate on Jerome Lane in Milford to which the record title, since 1972, has stood in the names of James E. Hackett and Suellen Hackett and the survivor of them.[2] At the time of purchase in 1972, the Hacketts both executed a purchase money mortgage to the First Federal Savings and Loan Association of New Haven in the amount of $38,300. The Hacketts were divorced in April, 1978, after approximately fifteen years of marriage. There was no evidence adduced at the trial that the divorce decree at all operated on this Jerome Lane property so that the record title to it remains as it was acquired in 1972.[3] The plaintiff has lived in these premises since September, 1978, and has paid the expenses for them since that time.[4]

The defendant has filed a counterclaim in which it is alleged that she and the plaintiff hold this real estate

[1] This action, as originally brought, also named as defendants, First Federal Savings and Loan Association of New Haven now known as First Constitution Bank (the first mortgagee) and Household Finance Company (the second mortgagee). Early on, the action was withdrawn as to the First Constitution Bank and later during this action the Household Finance mortgage was paid off. For the purposes of this opinion, Suellen Hackett will be referred to as the defendant.

[2] The Hacketts acquired this property in 1972.

[3] The complaint alleges and the answer admits that "the plaintiff and defendant co-owner hold this real estate as joint tenants and each has an individual one-half (½) interest therein."

[4] James Hackett has resided in the Jerome Lane premises since the purchase in 1972, except for a brief period during the divorce proceedings. He did not reside there from April, 1978, to September, 1978, having left for that period because the custody of the parties' two minor children, then aged twelve and fourteen, was being worked out. At the time of the divorce, he was awarded the custody of the two children, who have lived there with him ever since except for time attending college. Suellen Hackett has not resided there since about October, 1978.

as joint tenants. She also alleges and the plaintiff denies that her "interest in the property exceeds one-half" and her counterclaim sets out that claim as follows: "One-half interest in and to the premises . . . plus the value of the deposit the parties made upon the premises at the time they purchased the same." She further alleges that "[t]he deposit made upon said premises at the time of purchase was made from funds given . . . as a gift to her; she is equitably entitled to the value thereof and a corresponding increase in value in her interest in the premises." The plaintiff has denied these allegations. She also seeks a partition as well as a "determination of the respective interests of the parties in and to the premises as demanded by law and equity."

The court, *Fracasse, J.,* earlier ordered a judgment of partition by sale and appointed a committee to sell the premises in accordance with that judgment.[5] A sale by the committee has already taken place at which the plaintiff was the successful bidder with a bid of $110,000. The court, *Celotto, J.,* has approved the committee sale,[6] report and deed as well as the motion for the committee's fee and expenses.[7] Thereafter, the plaintiff filed his motion for an immediate hearing "for the determination of the respective rights of the parties to the proceeds of 18 Jerome Lane, Milford, CT." The court, *Licari, J.,* granted the extension for the closing to October 1, 1990. The "Motion for Immediate Hearing," the purpose of which is to

---

[5] That judgment ordered that the cost of the sale was to be borne jointly between the plaintiff and the defendant.

[6] The committee sold the premises on June 9, 1990, subject, inter alia, to the first mortgage to First Constitution Bank. The balance due on this mortgage as of May 31, 1990, was $28,821 upon which amount the interest runs at the rate of $46.20 per day.

[7] The court allowed the committee a fee of $2800 and the sum of $907.34 for its expenses.

obtain an order determining the division of the proceeds of the sale as between the plaintiff and the defendant, was heard before the court at which time both the plaintiff and the defendant, as well as other witnesses testified, and certain documents were admitted into evidence.

The plaintiff contends that he has paid everything since 1978, and that the defendant, because of her laches has waived any interest in the property. He relies on *Kievman* v. *Grevers,* 122 Conn. 406, 189 A. 609 (1937). He also maintains that if his claim of laches fails he is entitled to contribution from the defendant for the payments concerning this property that he has made since September, 1978, for such things as the first mortgage, insurance, taxes, maintenance, repairs and the like. In addition, he disputes the impact on this case claimed by the defendant of *Vesce* v. *Lee,* 185 Conn. 328, 441 A.2d 556 (1981).

On the other hand, the defendant claims that she is entitled to one half of the $110,000 bid price minus one half of the expenses of the committee's sale, i.e., $1853.67. The defendant also claims that while the plaintiff paid the expenses since September, 1978, it must be realized that he has had this property as a residence since that time and that the value of his use and occupancy over that period exceeds the mortgage payments that he has made. She further maintains that the plaintiff's claim that the court consider his payments of the mortgage, real estate taxes and home insurance over these years in the light of *Vesce* and contends that they are incident to use and occupancy that the plaintiff has had since late 1978, and for which he has never made any payment to her. She also claims that she cannot be charged with laches because the plaintiff waited since late 1978 until early 1989 to raise his present claims knowing that the divorce decree did not address the ownership of the Jerome Lane prop-

erty. Acceptance of the plaintiff's claims at this point would, the defendant contends, be tantamount to awarding to him now her share of the property in the original 1978 divorce decree which did not touch this property at all.[8] The defendant maintains that it is the plaintiff who is guilty of laches.

A partition action is equitable in nature. *Gaer Bros., Inc.* v. *Mott,* 147 Conn. 411, 415, 161 A.2d 782 (1960); see *Varley* v. *Varley,* 189 Conn. 490, 497 A.2d 1065 (1983). "Our courts of equitable jurisdiction are empowered to order the sale of any estate, real or personal, owned by two or more persons, when, in the opinion of the court, a sale would better promote the interests of the owners. General Statutes § 52-500. Ordinarily, in a partition by sale, the claims of the parties as to their interests in the property are considered in connection with the distribution of the proceeds." *Gaer Bros., Inc.* v. *Mott,* supra. In a partition sale, even where each party may be the owner of an individual one-half interest in the property, it does not necessarily follow that he or she will be entitled to equal shares of the moneys obtained from the sale as the "[e]quities must be considered and, if established, must be liquidated before distribution is ordered. *Rentz* v. *Eckert,* 74 Conn. 11, 16, 49 A. 203 [1901]." *Levay* v. *Levay,* 137 Conn. 92, 96, 75 A.2d 400 (1950); see *Varley* v. *Varley,* supra; *Johnson* v. *Olmsted,* 49 Conn. 509, 517 (1882).

Initially, we note that the defendant alleges that the deposit on this real estate when originally purchased was made from funds given to her as a gift and that she is equitably entitled to the return of that deposit and a corresponding increase in her interest in the proceeds from the sale. The plaintiff's testimony, however,

---

[8] There is no evidence to explain why the 1978 divorce decree did not operate on the Jerome Lane property and this court cannot speculate as to any such reason or reasons.

suggests that he be given credit against the sales proceeds involved because he paid the deposit on the Jerome Lane premises when the parties acquired them in 1972. This court does not agree here with the claim of either party. The amount of the deposit that the plaintiff said that he paid was $7000 and he testified that it came from the sale of certain real estate in Waterbury. This deposit, it is claimed, together with the purchase money mortgages in the amount of $38,300 constituted the purchase price.

"It is settled law that where one spouse purchases property entirely with his or her own funds and takes title in the names of both spouses jointly, a rebuttable presumption arises that a gift was intended to the other spouse of a one-half interest in the propery. . . . This is the rule whether the person who pays the purchase price is the husband or the wife." (Citations omitted.) *Osborne* v. *Osborne*, 384 Mass. 591, 602, 428 N.E.2d 810 (1981); *Oldham* v. *Oldham*, 192 A. 758, 762 (R.I. 1937); *Sundin* v. *Klein*, 221 Va. 232, 236–37, 269 S.E.2d 787 (1980); see 3 J. Pomeroy, Equity Jurisprudence (4th Ed.) § 1039. It has been said that the general rule is that, when property is paid for by one and taken in the name of another or jointly in both their names, the presumption is that, as between husband and wife as to real property, a gift is presumed from the husband, and that rests on the proposition that the husband is discharging his duty to provide support for his wife. *Becchelli* v. *Becchelli*, 109 Ariz. 229, 232, 508 P.2d 59 (1973). The plaintiff, even if this court assumes that he did pay the deposit as claimed, is not entitled to any "credit" for paying the deposit of $7000 at the time of the purchase in 1972 as there is no credible evidence to rebut the presumption of a gift to her. Although the defendant alleges that she furnished the deposit, there is no evidence on which the court concludes that she did so. It should be pointed out, however, that there

is authority to the effect that the fact that the wife also obligated herself to repay the mortgage loan used toward the purchase price to the same extent as did the husband militates toward demonstrating that she furnished consideration at the time of the purchase in 1972. See *McPherson* v. *McPherson*, 337 Mass. 611, 614, 150 N.E.2d 727 (1958); *Carroll* v. *Markey*, 321 Mass. 87, 89, 71 N.E.2d 756 (1947).

As already noted, the parties were divorced in April, 1978, and there is no indication that the divorce decree operated in any way on the Jerome Lane property. Actually, counsel have indicated that the decree did not. Therefore, under the statutes, i.e., General Statutes § 47-14g,[9] their interest in this real estate, as to each other, has been that of tenants in common since the 1978 divorce and each, accordingly, owns of record an individual one-half interest in the Jerome Lane real estate. Moreover, the complaint alleges that at all times mentioned, the plaintiff and the defendant coowner "hold the [Jerome Lane] real estate as joint tenants and each has an individual one-half (½) interest therein." The defendant admits this. Without developing the niceties of real property law, this allegation of the plaintiff is in the nature of a judicial admission in

---

[9] General Statutes § 47-14g provides: "DIVORCE OR MARRIAGE DISSOLUTION OF HUSBAND AND WIFE JOINT TENANTS. Whenever a husband and wife are joint tenants in the same real estate, either together or in conjunction with others, a divorce or dissolution of the marriage, unless the divorce decree or decree of dissolution otherwise provides, severs their interests and converts them into tenants in common as to each other but not as to any remaining joint tenant or joint tenants. Such severance does not become effective as to any other persons until a certified copy of the decree or abstract of it, indicating the effective date of the divorce or dissolution, has been recorded in the land records of the town where the real estate is located."

The divorce decree was not offered in evidence nor was there any evidence concerning it except some testimony that the plaintiff was awarded custody of the two minor children and that he is still under an alimony order of $40 per week.

this action, i.e., the plaintiff admits in the pleadings that the defendant owns an individual one-half interest. So, at the outset this means that each party is entitled to one half of the case proceeds of the sale, i.e., $55,000. It cannot be questioned that each party should pay out of this fund one half of the costs of the sale, i.e., one half of $3907 or $1953.50 as the court, *Fracasse, J.,* has already so ordered.

We turn to the plaintiff's claim that the defendant is barred from claiming an interest in this property because of laches. In doing so, he points out in his brief testimony not only of certain moneys expended for repairs and improvements but also his contention that, since September, 1978, he "has paid the mortgage without any contribution from the defendant . . . [which is for] twelve (12) years at an average of approximately $475 per month for a total of $68,400." Crediting him with these expenses, as he claims he should be, would, he argues, wipe out any interest of the defendant in this property. On his claim of laches, the plaintiff relies on *Kievman* v. *Grevers,* supra, asserting that there the court properly refused to apply that doctrine as the court found that the plaintiff had not been prejudiced by the defendant's actions. The present case, he asserts, is distinguished from *Kievman* because here he has been prejudiced by the defendant's conduct. He contends that he has been "forced" to expend much money throughout the years to keep a home for himself and the children. Moreover, he asserts that the lapse of time here, as compared to a three year lapse in *Kievman,* supports his position that the defendant cannot simply sit on her rights, gain all the benefits from these payments he has made, while not contributing a penny as well as claiming any interest or right to the property. He therefore concludes that she is not entitled to any of the proceeds from the partition sale.

On the other hand, the defendant rejects the argument of laches as well as arguing that the plaintiff's reliance on *Kievman* is misplaced. The defendant cites *Kievman* v. *Grevers,* supra, 408–11, where the Supreme Court affirmed the trial court's finding of the inapplicability of laches because the plaintiff had not proved prejudice. She further claims that *Kievman* is inapposite on both the law and the facts because it concerned a special rule of law respecting the purchase of an outstanding adversary claim by the plaintiff cotenant which "required payment of contribution by the other cotenants."

The court is of the opinion that the impact of *Kievman* is not at all what the plaintiff contends. As an examination of that decision discloses, it is factually distinguishable. Moreover, it can fairly be said that it stands for the well settled proposition that a cotenant who, because she has redeemed a mortgage on the common property (in a strict foreclosure) in which she and her cotenant were both liable, is entitled to contribution as a type of equitable assignee of the rights of the foreclosing mortgagee so as to be able to enforce that mortgage against her cotenant to the extent of the latter's ability to contribute to its satisfaction.[10] *Kievman* v. *Grevers,* supra, 410–11; see 42 A.L.R.2d 1305, 1327. Moreover, the court notes that in *Kievman* there was no husband and wife relationship between the parties and no indication that any of

---

[10] In *Kievman* v. *Grevers,* 122 Conn. 406, 409–10, 189 A. 609 (1937), in noting the application of equitable principles to that case, the court said: "Tenants in common stand in confidential relations to each other in respect to their interests in the common title under which they hold, and since it would be inequitable for one, without the consent of the other, to buy in an outstanding adversary claim to the common estate and assert it for his exclusive benefit to their injury, if he does acquire such claim, he is regarded as holding it in trust for the benefit of all of those of his cotenants in proportion to their respective interests in the common property, who seasonably contribute their share of his necessary expenditures."

the parties were in actual possession of the property involved. The court, however, recognizes the nature of the doctrine of laches as discussed in *Kievman,* but does not read that case as the plaintiff contends in its application to the present case.

The doctrine of laches is " 'such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.' " 2 J. Pomeroy, Equity Jurisprudence (5th Ed. Symons) § 419. Our Supreme Court has said: "Laches consists of two elements. 'First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant.' *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906 (1955); *Kievman* v. *Grevers,* [supra, 411]; 27 Am. Jur. 2d, Equity § 152. The mere lapse of time does not constitute laches; *Finucane* v. *Hayden,* 86 Idaho 199, 206, 384 P.2d 236 (1963); 27 Am. Jur. 2d, Equity § 163; unless it results in prejudice to the defendant; see *Leary* v. *Stylarama of New Haven, Inc.,* 174 Conn. 217, 219, 384 A.2d 377 (1978); *Bianco* v. *Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969); as where, for example, the defendant is led to change his position with respect to the matter in question. *Pukas* v. *Pukas,* 104 R.I. 542, 545–46, 247 A.2d 427 (1968)." *Bozzi* v. *Bozzi,* 177 Conn. 232, 239, 413 A.2d 834 (1979).

"The burden of proof as to the existence of laches is on the party asserting it . . . ." *A. Sangivanni & Sons* v. *F. M. Floryan & Co.,* 158 Conn. 467, 476, 262 A.2d 159 (1969); *Cleary* v. *Zoning Board,* 153 Conn. 513, 518, 218 A.2d 523 (1966). The conclusion whether a party has been guilty of laches is a factual determination. *Berin* v. *Olson,* 183 Conn. 337, 344, 439 A.2d 357 (1981); *Kurzatkowski* v. *Kurzatkowski,* supra, 684.

The plaintiff has lived in the Jerome Lane property since the 1978 divorce and has had complete use of it since that time. Living with him since that time are the two children of the parties. The children are now aged twenty-six and twenty-four. The plaintiff has made all the mortgage, taxes and insurance payments since the divorce. He has also paid for certain repairs and improvements there, which he maintains cost him about $2755. He is under an alimony order to pay the defendant $40 per week and would appear to be relatively current on that order. The defendant lives in Waterbury. She maintains that the alimony payment is her only income. She is unemployed, has no other assets and pays for her rent and food from money that she borrows and is obligated to repay. The plaintiff knew where she was over the period in question, from 1978 to 1989, although "not all the time." He felt that he was free to repair and improve the premises. He never consulted the defendant concerning any of the repairs and improvements as it would have been "pointless" according to him. There is no evidence that he ever attempted to get her to contribute to the mortgage, taxes or insurance payments. The defendant visited the premises rarely over the period involved; she did not inquire of the plaintiff concerning the mortgage, taxes or insurance payments nor specifically concerning the repairs and improvements. There is no credible evidence that the parties even spoke with one another since 1978 concerning any payments the plaintiff made over the period involved. It was not until the present action was instituted by the plaintiff in 1989, more than ten years after the divorce, that these matters became contested between them. As pointed out, during that period the plaintiff has had the complete use and occupancy of these premises. Equitably, this cannot be overlooked in this case, given the available credible evidence, especially of a financial nature, of what the

plaintiff has paid in living there. An objective view of what the use and occupancy fairly cost him over the entire period indicates that it was in a reasonable range. "The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." *Way* v. *Pavent,* 179 Conn. 377, 380, 426 A.2d 780 (1979). "Nor can judges exclude from their minds realities of which fair decision would call for judicial notice." *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corporation,* 518 F.2d 751, 753 (2d Cir. 1975); *State* v. *Jones,* 180 Conn. 443, 455, 429 A.2d 936 (1980). He also admittedly had a free hand to repair and improve it and this without any effort on his part to consult with the defendant about the repairs or any of the questions now raised. Of course, this is not to say that she could not have undertaken to do so. It is the plaintiff, however, who has raised laches, not the defendant. Equity looks to the substance of a matter not to mere form; *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 397, 216 A.2d 814 (1966); and it "never does anything by halves." *Barber* v. *International Co. of Mexico,* 73 Conn. 587, 605, 48 A. 758 (1901). The burden to prove laches is on the plaintiff and, after balancing the equities, the court concludes on the credible evidence that the plaintiff has not sustained his burden on either of the two elements of laches, either inexcusable delay or prejudice to himself whereby he was led to change his position. *Bozzi* v. *Bozzi,* supra.

We next turn to *Vesce* v. *Lee,* supra, particularly as the parties claim it applies to the matter of contribution for mortgage payments, repairs and the like. The defendant relies on *Vesce* arguing that the plaintiff has neither alleged nor attempted to prove any agreement by her to make any such contributions as well as to his admission that he never made any such claim prior to bringing this action. Therefore, she maintains that the

presumption exists, as set out in *Vesce,* that "[w]hen
. . . parties have been living together [as] husband and
wife, there is a presumption that, when one party
vacates the commonly owned family residence, future
expenditures will continue to be made for the joint bene-
fits of the cotenants. In other words, the simple fact
that the [defendant] vacated the family home, leaving
the [plaintiff] in possession, was not sufficient to rebut
the presumption that the parties intended that all
expenditures made after the separation, even if made
by only one of them, would continue to accrue for the
benefit of both parties without any further accounting
or contribution."[11] Id., 336. The plaintiff's answer is
that *Vesce* is distinguishable from this case because here
the Hackett mortgage was taken out in the names of
both the plaintiff and the defendant and, by so doing
they "agreed to be responsible for the mortgage," and
that, unlike *Vesce,* there was an agreement in this case.

The court is inclined to accept the plaintiff's view as
to *Vesce* as applied to this mortgage including the tax
and insurance payments. The presumption referred to
in *Vesce* is to be considered in the present case. As *Vesce*
notes, however, the mere fact that the defendant
vacated is not sufficient to rebut that presumption.
There is, however, more than that in the present case.

Under the circumstances, the defendant knew that
the plaintiff had been living at the Jerome Lane prop-
erty with the children from 1978 to 1989 and she also
knew that this first mortgage which she had signed was
being paid or, if it had already been paid off, that she
had not, in either case, paid any money on it (includ-
ing the taxes and the real estate insurance).

---

[11] Here the *Vesce* court cited, inter alia, *Seidel* v. *Seidel,* 110 Conn. 651,
656, 149 A. 394 (1930) and *Neumann* v. *Neumann,* 134 Conn. 176, 178–79,
55 A.2d 916 (1947). *Vesce* v. *Lee,* 185 Conn. 328, 336–37, 441 A.2d 556 (1981).
In making her claim in this case the defendant draws heavily on the lan-
guage from *Seidel* that is set out in *Vesce.* See id., 337, as well as on *Seidel*
itself.

In addition, the defendant having lived there for about six years before the divorce, it is not unreasonable to impute to her some knowledge that reasonable repairs and improvements are required during an eleven year period, i.e., from 1978 to 1989. This court, therefore, inclines to the view that *Vesce* does not control here and that the payments on the first mortgage, which included taxes and insurance, and repairs and improvements were not, after September, 1978, to "continue to accrue without any future . . . contribution." Cf. *Vesce* v. *Lee,* supra. Each party had the opportunity to contact the other concerning these payments yet did not. The plaintiff, however, continued to make them and the defendant, who was equally liable for them, cannot now equitably be heard to say that she has no responsibility for them insofar as that responsibility can be translated into dollars out of the sales proceeds.

"The liability of a cotenant who has been in possession of the common property arising from his occupancy and use thereof may be affected by the nature of the proceeding in which the matter requires determination. When, in a suit for partition or other proceeding between cotenants in equity or in which equitable powers may be exercised, an occupying cotenant seeks contribution from his co-owners, the court, in some jurisdictions as incidental to the relief sought and by way of adjusting the rights of the parties, may charge the claimant, *defensively,* with at least part of the reasonable value of his use and occupancy . . . ." (Emphasis added.) 20 Am. Jur. 2d, Cotenancy and Joint Ownership § 44.

"[T]he general rule [is] that in the absence of an agreement to pay or ouster by the cotenant in possession, a tenant in common who occupies all or more than her proportionate share in the common premises is not liable, because of such occupancy alone, to her cotenant

for the rent or the use of the premises. *Williams* v. *Sinclair Refining Co.,* 39 N.M. 388, 47 P.2d 910 (1935); *Hunter* v. *Schultz,* 240 Cal. App. 2d 24, 49 Cal. Rptr. 315 (Dist. Ct. App. 1966); *Lanigir* v. *Arden,* 85 Nev. 79, 450 P.2d 148 (1969). There is, however, an exception to this general rule. When a cotenant in possession invokes the jurisdiction of a court of equity to obtain contributions from the cotenant out of possession for funds expended for the betterment of the common interest, the cotenant out of possession may *defensively* charge the cotenant in possession with a part of the reasonable value of the occupancy or use by the cotenant in possession and in some cases may hold the cotenant in possession accountable for profits realized from the premises. *Hunter* v. *Schultz,* supra; *Lanigir* v. *Arden,* supra; 20 Am. Jur. 2d, Cotenancy and Joint Ownership § 44 (1965); 68 C.J.S. Partition § 41 (1950)." (Emphasis in original.) *Chance* v. *Kitchell,* 99 N.M. 443, 445, 659 P.2d 895 (1983); see *Lanigir* v. *Arden,* supra, 81; 20 Am. Jur. 2d, Cotenancy and Joint Ownership § 44. This exception comports with the equitable considerations to be considered because as Professor Casner has said: "Since partition settles the relation existing between the cotenants [as to the jointly owned property] all equities arising out of that relation are finally adjusted by the final decree." 2 A. Casner, American Law of Property § 6.26, p. 117. The plaintiff by his demand for contribution has brought himself within this exception and having done so, it should, if possible, be reflected in the division of the proceeds of the sale. At the trial, the defense indicated that it was not making a formal claim for entitlement to payment for use and occupancy as its trial brief asserted which included the citation of *Lerman* v. *Levine,* 14 Conn. App. 402, 541 A.2d 523, cert. denied, 208 Conn. 813, 546 A.2d 281 (1988). The defense, however, does emphasize that the plaintiff "has had com-

plete use and occupancy of the premises for approximately twelve years at very reasonable monthly payments for mortgage, insurance and taxes." The money from the sale in partition "is to stand for the land" in making necessary orders for the protection of the rights of the parties. *Johnson* v. *Olmsted,* supra, 519.

"[C]ontribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others." *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965); see *Kievman* v. *Grevers,* supra, 409–10. It is based not on contract, but on that equitable principle that those voluntarily assuming a common burden should bear it equally. *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.,* 124 Conn. 227, 231–32, 199 A.2d 93 (1938); see 18 C.J.S. Contribution §§ 1, 3. Our Supreme Court has said that "[a]ctions for contribution are based upon the principle, equitable in origin but now recognized in courts of law, that where one person has been compelled to pay money which others were equally bound to pay, each of the latter in good conscience should contribute the proportion which he ought to pay of the amount expended to discharge the common burden or obligation." *Azzolina* v. *Sons of Italy,* 119 Conn. 681, 692, 179 A. 201 (1935); see 18 Am. Jur. 2d, Contribution § 31. Contribution may operate "wherever one has paid more than his share of a joint obligation, [and] he may, in general, recover the excess from those bound with him." 18 Am. Jur. 2d, Contribution § 31.

On the contribution phase of matter, this court turns to the mortgage on the Jerome Lane real estate which the evidence indicates was undertaken as the obligation of both parties. It was stipulated that the present balance on the mortgage was $28,821 with interest on that amount accruing at the amount of $6.20 per diem. There is no dispute that the plaintiff has made all the

mortgage payments since September, 1978. The plaintiff testified that the mortgage payments include payments of taxes and insurance. The plaintiff's brief maintains that he "has paid the mortgage since September, 1978, without any contribution from the defendant [and that] this is twelve (12) years at an average of approximately $475 per month for a total of $68,400." The plaintiff, however, does not point out how he gets this figure of approximately $475 per month on the evidence adduced in the present case. There is not in evidence in the present case any cancelled check, any receipt, any book of record, any proof of any payment claimed to have been made by the plaintiff. It is true that the mortgage which was originally (in 1972) in the amount of $38,300 now has a principal balance of $28,821 and that the original 1972 mortgage (a copy of which is in evidence) states that the monthly payment is to be $275 and the court credits that as well as the plaintiff's statement that he has paid this mortgage since September, 1978. He also testified that the present monthly payment is now $560 and he maintains that that is so because the taxes and insurance payments have increased. There is, however, no evidence as to what the tax and insurance payments were in September, 1978, the date of any increases or the amount of those increases even if there was only one increase for each. The plaintiff testified, without reference to any time frame except from September, 1978, to the time of the trial that the taxes had increased from $1200.09 to $3600 per year and that the cost of insurance had also increased.

The figure of $560 per month might be the present monthly payment but there is no evidence to show what increments over the years were involved to get to that figure, including its components. The court is not say-

ing that precision or mathematical exactitude is needed for such evidence, but there should be evidence, with such certainty as the nature of the particular case may permit, as to lay a foundation that will enable the trier to make a fair and reasonable estimate. See *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 226, 477 A.2d 988 (1984). It is recognized that there may be cases where proof of such claims, as with damages, are difficult, but it is relevant here to remember that "[t]he court must have evidence by which it can calculate damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." *Bronson & Townsend Co.* v. *Ballistoni,* 167 Conn. 321, 326–27, 355 A.2d 299 (1974). Moreover, to do so, there must be such evidence as the nature of the particular case permits. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* supra, 226 n.22. It is submitted that it is not at all unreasonable that the present case permitted much more certainty as to the nature of the evidence to support the plaintiff's claim here than was offered. The plaintiff, who is seeking contribution and has the burden in that claim, has paid all the bills, yet not only was there a lack of testimony on how and when the taxes and insurance increased over the years, especially as to incremental increases, but, as pointed out earlier, not one single cancelled check, receipt or the like was introduced into evidence. "Equity is a two-way street and must be recognized as such wherever the court employs equity to resolve a dispute." *Jerry Harmon Motors, Inc.* v. *Heth,* 316 N.W.2d 324, 329 (N.D. 1982). The lack of evidence, therefore, on which to accept the plaintiff's claim of an average of approximately $475 per month for approximately twelve years obviously seriously blunts the thrust of the $68,400 contention. The only hard evidence before the court of any figure

of the mortgage that fairly extends over the entire period from September, 1978, to the time of trial is the monthly payment of $275 on principal and interest. Starting with September, 1978, and through September, 1990, these monthly payments amount to a gross figure of about $39,875. The plaintiff and the defendant had a right to an undivided one half of this real estate. As to the mortgage payment, which includes the taxes and insurance, to which she has never contributed, her share of this obligation is that she is to contribute now to the plaintiff 50 percent of $39,875, which is $19,937.50. If the evidence furnished any reasonable basis, which as pointed out earlier is lacking, it would require her share of the sales proceeds to be further diminished by having to "contribute" 50 percent of the taxes and insurance, which would be appropriate. The evidence, however, does not furnish any such reasonable basis and it would be indulging in pure speculation for the court to come up with any such figures. The plaintiff has had complete use and occupancy of the Jerome Lane premises since 1978, therefore, the amount of $19,937.50 is fair and proper for the plaintiff to "contribute" here, and it is an amount that is fair and proper for the plaintiff to receive. It is, therefore, concluded that the amount that the defendant must "contribute" to the plaintiff out of the sales proceeds with reference to the mortgage, taxes and insurance claim of the plaintiff is $19,937.50.

As to repairs and improvements,[12] the plaintiff claims that since September, 1978, he has had the expenditure of $3375 for the following:

---

[12] There is no evidence in the present case of the value of the real estate involved at any time since 1972, when the purchase price paid appears to have been $45,300.

(1) Installation of wall to wall carpeting in
    the family room and living room ........$1500
(2) Purchase of a new hot water heater .....$ 400
(3) Replacement of flooring in the kitchen
    and foyer ............................$ 675
(4) Replacement of gutters on house ........$ 600
(5) Purchase of new storm windows
    and doors ............................$ 200
                                          $3375

"A repair restores the original condition. An improvement changes, supposedly for the better, the original condition." *Masterson* v. *Atherton,* 149 Conn. 302, 312, 179 A.2d 592 (1962). It seems fair to the court that from the defendant's share of the sales proceeds she "contribute" 50 percent of these expenses, which is $1687.50, whether any or all of them be called an "improvement" or "repair." All appear to be reasonable.

To recapitulate, the proceeds of the sales price of $110,000 are ordered to be divided[13] as follows:

[13] At the trial the defendant produced a certified public accountant who testified, inter alia, concerning certain tax consequences to the parties arising out of this lawsuit. This testimony was offered on the defendant's claim that she was entitled equitably to one half of the capital gains tax liability from the proceeds of the sale. The accountant testified concerning the amount of the capital gains tax both under federal and state law that the defendant would incur in the event that she was awarded 50 percent interest in the proceeds of the sale of the Jerome Lane real estate. That witness indicated in answer to a hypothetical question in that regard that, given her present income of only $40 per week from her alimony payment, she becomes subject to a total of about $12,000 in capital gains taxes (about $9000 on the federal level and about $3000 on the state level). On cross-examination, however, that accountant stated that these figures were "speculation depending on the amount that's awarded." An "award" can fairly be said to mean "a judgment or finding upon a disputed matter submitted for decision." *People ex rel. Halloch* v. *Hennessy,* 205 N.Y. 301, 308, 98 N.E. 516, 131 N.Y.S. 327 (1912). The award here is not on the order of $55,000 but is $31,421.50. Accordingly, the accountant's opinion cannot be so accepted by this court and no allowance for any resulting capital gains tax liability of the defendant can be made.

To <u>plaintiff James E. Hackett</u>

| | |
|---|---:|
| Plaintiff's 50 percent share in 18 Jerome Lane | $55,000.00 |
| *minus* 50 percent of the costs of the committee sale | 1953.50 |
| | $53,046.50 |
| *plus* contribution by defendant for mortgage payments, insurance and taxes | 19,937.50 |
| *plus* 50 percent contribution from defendant for improvements and repairs | 1687.50 |
| Total to be paid to plaintiff | $74,671.50 |

To <u>defendant Suellen Hackett</u>

| | |
|---|---:|
| Defendant's 50 percent share in 18 Jerome Lane | $55,000.00 |
| *minus* 50 percent of the costs of the committee sale | 1,953.50 |
| | $53,046.50 |
| *minus* contribution to plaintiff for mortgage payments, taxes and insurance | 19,937.50 |
| | $33,109.00 |
| *minus* contribution of 50 percent to plaintiff for improvements and repairs | 1687.50 |
| Total to be paid to the defendant | $31,421.50 |

Therefore, on the plaintiff's motion for immediate hearing it is ordered that the sale proceeds of $110,000 be paid out as follows:

| | |
|---|---:|
| To the plaintiff James E. Hackett | $74,671.50 |
| To the defendant Suellen Hackett | $31,421.50. |